# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Carter v. SSC Odin Operating Co.*, 2011 IL App (5th) 070392-B

---

| | |
|---|---|
| Appellate Court Caption | SUE CARTER, Special Administrator of the Estate of Joyce Gott, Deceased, Plaintiff-Appellee, v. SSC ODIN OPERATING COMPANY, LLC, d/b/a/ Odin Healthcare Center, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-07-0392 |
| Filed | August 18, 2011 |
| Rehearing denied | September 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death action arising from the death of a resident of defendant's nursing home, the trial court properly denied defendant's motion to compel arbitration pursuant to the agreements signed by decedent and plaintiff as her representative, since the arbitration agreement was unenforceable for a lack of mutuality and on the ground that it did not apply to plaintiff's wrongful death claim. |
| Decision Under Review | Appeal from the Circuit Court of Marion County, No. 06-L-75; the Hon. David L. Sauer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

W. Jeffrey Muskopf and Mark R. Feldhaus, both of Lashly & Baer, P.C.,
of St. Louis Missouri, and Malcolm J. Harkins III and James F. Segroves,
both of Proskauer Rose LLP, of Washington D.C., for appellant.

Staci M. Yandle, of Law Offices of Staci M. Yandle, LLC, of O'Fallon,
for appellee.

Panel

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justice Goldenhersh concurred in the judgment and opinion.
Justice Spomer concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1     The plaintiff, Sue Carter, as the special administrator of the estate of Joyce Gott,
deceased, filed a complaint against the defendant, SSC Odin Operating Company, LLC,
doing business as Odin Healthcare Center, alleging that the defendant negligently provided
nursing home services to Joyce that resulted in injuries to Joyce and contributed to the cause
of her death. The defendant filed a motion to compel arbitration of the claim pursuant to two
signed arbitration agreements. The circuit court denied the defendant's motion to compel
arbitration. Initially, we affirmed the circuit court's order, holding that the arbitration
agreements were void for being against the public policy set forth in the antiwaiver
provisions of the Nursing Home Care Act (210 ILCS 45/3-606, 3-607 (West 2006)).[1] *Carter
v. SSC Odin Operating Co.*, 381 Ill. App. 3d 717, 885 N.E.2d 1204 (2008). The supreme
court reversed, holding that the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2000))
preempted the Nursing Home Care Act. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30,
927 N.E.2d 1207 (2010). The court remanded the cause to us for consideration of the other
issues raised by the parties that we did not previously address, including whether the parties'
arbitration agreements evidence a transaction "involving [interstate] commerce" within the
meaning of section 2 of the Federal Arbitration Act (9 U.S.C. § 2 (2000)), whether the

[1]Section 3-606 of the Nursing Home Care Act provides, "Any waiver by a resident or his
legal representative of the right to commence an action under Sections 3-601 through 3-607,
whether oral or in writing, shall be null and void, and without legal force or effect." 210 ILCS
45/3-606 (West 2006).

Section 3-607 of the Nursing Home Care Act provides, "Any party to an action brought
under Sections 3-601 through 3-607 shall be entitled to a trial by jury and any waiver of the right
to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be
null and void, and without legal force or effect." 210 ILCS 45/3-607 (West 2006).

arbitration agreements are void for a lack of mutuality, and whether the arbitration agreements apply to the plaintiff's claim under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)). After consideration of the additional issues raised by the parties, we again affirm the order of the circuit court.

¶ 2                              BACKGROUND

¶ 3        The defendant operates a nursing home facility in Odin, Illinois. The plaintiff alleged in her complaint that Joyce was admitted to the facility from May 20, 2005, through July 29, 2005, and again from January 12, 2006, until her death on January 31, 2006. At the beginning of Joyce's first stay at the defendant's facility, the plaintiff, as Joyce's "legal representative," executed a written "Health Care Arbitration Agreement" with the defendant. This agreement is dated May 20, 2005. Six days after Joyce's second admission to the defendant's facility, Joyce herself signed a second written "Health Care Arbitration Agreement" with the defendant, the terms of which are identical to those of the first agreement. This second agreement is dated January 18, 2006. The plaintiff's signature does not appear on the second arbitration agreement.

¶ 4        Both arbitration agreements state that they "shall not apply to any dispute where the amount in controversy is less than two hundred thousand ($200,000.00) dollars." The agreements further provide as follows:

"In consideration of this binding Agreement, the Facility and the Resident acknowledge that they are agreeing to a mutual arbitration, regardless of which party is making a claim; that the Facility agrees to pay the fees of the arbitrators and up to $5,000.00 of reasonable and appropriate attorney's fees and costs for the Resident in any claims against the Facility; that the Resident shall have the right to choose the location of any arbitration under this Agreement; that the parties will mutually benefit from the speedy and efficient resolution of disputes which arbitration is expected to provide; and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties hereto. Intending to be legally bound, the parties expressly agree that this Agreement will be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16 ('FAA'). It is the express intent of the parties to have a binding arbitration agreement and the parties further agree as follows:

The parties agree that they shall submit to binding arbitration all disputes against each other and their representatives, affiliates, governing bodies, agents and employees arising out of or in any way related or connected to the Admission Agreement and all matters related thereto including matters involving the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Illinois law were violated; any disputes relating to the payment or non-payment for the Resident's care and stay at the Facility; and any other dispute under state or Federal law based on contract, tort, statute (including any deceptive trade practices and consumer protection statutes), warranty or any alleged breach, default,

negligence, wantonness, fraud, misrepresentation or suppression of fact or inducement."

¶ 5 The agreements further state as follows: "Each party agrees to waive the right to a trial, before a judge or jury, for all disputes, including those at law or in equity, subject to binding arbitration under this Agreement." The agreements state that the parties intend for the agreements to bind "the Resident, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives, including the personal representative or executor of his or her estate; and the Legal Representative, his/her successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives or executor of his or her estate."

¶ 6 Joyce died on January 31, 2006, during her second stay at the defendant's nursing home facility. On November 22, 2006, the plaintiff filed a two-count complaint against the defendant. Count I of the complaint alleges a statutory survival action pursuant to the Probate Act of 1975 (755 ILCS 5/27-6 (West 2006)) and the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2006)) (the survival action). Count II alleges a statutory action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)) (the wrongful death action). In both counts, the plaintiff alleged that the defendant had failed to provide Joyce with adequate care. In the survival action, the plaintiff alleged that the defendant's acts and/or omissions resulted in Joyce suffering pain, emotional distress, and mental anguish between January 12, 2006, and January 31, 2006. In the wrongful death action, the plaintiff alleged that the defendant's acts and/or omissions resulted in Joyce's death and that, therefore, her heirs were deprived of her companionship and society.

¶ 7 In its answer to the complaint, the defendant raised the arbitration agreements as an affirmative defense to the claims. The defendant also filed a motion to compel arbitration based on the arbitration agreements. The plaintiff contested the motion to compel arbitration, arguing that the agreements are void for being in violation of Illinois public policy, as set forth in sections 3-606 and 3-607 of the Nursing Home Care Act (210 ILCS 45/3-606, 3-607 (West 2006)), that the arbitration agreements are void due to a lack of mutuality, that the contract does not fall under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2000)) because the agreements are not contracts evidencing a transaction involving interstate commerce, and that the arbitration agreements did not apply to the plaintiff's claim under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)).

¶ 8 On June 20, 2007, the circuit court entered an order denying the defendant's motion to compel arbitration. With regard to the survival action, the circuit court concluded that the agreements were not enforceable because they were "in direct violation of emphatically stated public policy and for lack of mutuality" and because, with regard to interstate commerce, "in the aggregate the economic activity does not represent general practice subject to federal control." With regard to the wrongful death action, the circuit court ruled that although Joyce was bound by the agreements with regard to her own claims, a plaintiff bringing a wrongful death claim on behalf of survivors was not bound by the agreements. The defendant filed a timely notice of interlocutory appeal.

¶ 9 We affirmed the circuit court's order, holding that the arbitration agreements were void for being against the public policy set forth in the antiwaiver provisions of the Nursing Home Care Act (210 ILCS 45/3-606, 3-607 (West 2006)). *Carter v. SSC Odin Operating Co.*, 381

-4-

Ill. App. 3d 717, 885 N.E.2d 1204 (2008). In our decision, we held that the Federal Arbitration Act did not preempt the Nursing Home Care Act. Because we affirmed the circuit court's order pursuant to the antiwaiver provisions of the Nursing Home Care Act, we did not address the alternative issues raised by the parties.

¶ 10 The defendant appealed to the supreme court, and the supreme court reversed our decision, holding that the Federal Arbitration Act preempted the Nursing Home Care Act. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 927 N.E.2d 1207 (2010). The court remanded the cause to us for consideration of the other issues raised by the parties that we did not previously address, including whether the arbitration agreements evidence a transaction "involving [interstate] commerce" within the meaning of section 2 of the Federal Arbitration Act (9 U.S.C. § 2 (2000)), whether the arbitration agreements are void for a lack of mutuality, and whether the arbitration agreements apply to the plaintiff's claim under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)). We now address each of these additional issues in turn.

¶ 11                                    STANDARD OF REVIEW

¶ 12 An order to compel arbitration is injunctive in nature and is appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010). *Peach v. CIM Insurance Corp.*, 352 Ill. App. 3d 691, 694, 816 N.E.2d 668, 671 (2004). Generally, an order granting or denying a motion to compel arbitration is reviewed under the abuse-of-discretion standard. *Peach*, 352 Ill. App. 3d at 694, 816 N.E.2d at 671. However, in an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, the standard of review is *de novo*. *Ragan v. AT&T Corp.*, 355 Ill. App. 3d 1143, 1147, 824 N.E.2d 1183, 1186-87 (2005). In the present case, there was no evidentiary hearing. Accordingly, we will review the trial court's ruling *de novo*. This court may affirm the judgment of a trial court on any basis warranted by the record. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418, 869 N.E.2d 195, 206 (2007).

¶ 13                                         DISCUSSION

¶ 14                                              I

¶ 15             Contract Evidencing a Transaction Involving Interstate Commerce

¶ 16 The first issue we address is whether the arbitration agreements are contracts evidencing a transaction involving interstate commerce. Section 2 of the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). The United States Supreme Court has noted that the Federal Arbitration Act was enacted pursuant to Congress's substantive power to regulate interstate commerce and admiralty. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967). Section 2 of the Federal Arbitration Act applies only to "any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2000). "Section 2 'embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a [maritime

transaction or a] contract evidencing interstate commerce,' in which case section 2 would simply not apply ***." *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563, 572, 928 N.E.2d 1, 10 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 489 (1987)). The words "involving commerce" in section 2 of the Federal Arbitration Act "signal[ ] an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

¶ 17     We believe that the record establishes that the arbitration agreements in the present case evidence a transaction involving interstate commerce. The defendant's memorandum of law in support of its motion to compel arbitration included the affidavit of the administrator of the defendant's nursing home facility in Odin, Illinois. The administrator stated in the affidavit that Joyce's nursing care was paid for by the federal Medicare program. The defendant made its request for payment for Joyce's care to Mutual of Omaha, which is "a fiscal intermediary that processes Medicare claims for the federal government." The affidavit states that Mutual of Omaha's office for processing Medicare payments to the defendant is located in Nebraska. Mutual of Omaha processed the defendant's Medicare request, and the defendant received $8,667.99 in Medicare payments for Joyce's care at the defendant's facility. The affidavit further states that for the two-year period beginning in 2005 and ending in 2006, the defendant received more than $9.3 million in Medicare and Medicaid funds for nursing care provided to various patients at the defendant's Odin nursing home facility.

¶ 18     The affidavit further establishes that the defendant received various supplies, including food, oxygen tanks, beds, maintenance, and office supplies, from several different vendors that are located in Missouri, Wisconsin, Minnesota, Nebraska, Kentucky, Georgia, Texas, Florida, Colorado, and California. The defendant provides its residents with therapy services from companies situated in Pennsylvania, Tennessee, Florida, Nevada, and Oregon, and its payroll is processed in an office located in Texas.

¶ 19     In *Fosler*, the court held that an arbitration agreement contained within a nursing home care agreement evidenced a transaction involving interstate commerce where the nursing home facility received Medicare and Medicaid payments for services provided to approximately 15% of its residents, received out-of-state insurance payments on behalf of the plaintiff, and purchased medical equipment, medical supplies, and over-the-counter medication from vendors outside Illinois. *Fosler*, 398 Ill. App. 3d at 578, 928 N.E.2d at 14-15. We agree with the *Fosler* court's analysis and hold that the arbitration agreements in the present case evidence a transaction involving interstate commerce.

¶ 20     Courts from other jurisdictions have also considered similar evidence and found it sufficient to satisfy the interstate commerce requirement of the Federal Arbitration Act. In *Triad Health Management of Georgia, III, LLC v. Johnson*, 679 S.E.2d 785, 787-88 (Ga. Ct. App. 2009), the Court of Appeals of Georgia held that evidence of Medicaid and Medicare payments and out-of-state supply purchases and insurance providers was sufficient to show a contract involving interstate commerce. In *Estate of Ruszala v. Brookdale Living Communities, Inc.*, 1 A.3d 806, 817 (N.J. Super. Ct. App. Div. 2010), the Superior Court of New Jersey found the facilities' purchases of out-of-state supplies, food, medicine, and equipment left "little doubt that the residency agreements at issue *** involve interstate commerce." See also *Vicksburg Partners, L.P. v. Stephens*, 2004-CA-01345-SCT (¶ 17)

(Miss. 2005) (a nursing home admissions agreement affected interstate commerce where the nursing home facility procured goods and services from out-of-state vendors, took in out-of-state residents, and received payments from out-of-state insurance carriers, including Medicare and Medicaid programs).

¶ 21 "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' " *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (*per curiam*) (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)). The nursing home facility in the present case cannot function without the supplies and services procured from out-of-state merchants and businesses. It collects a substantial amount of revenue from out-of-state insurance carriers, including Medicaid and Medicare. The facility's aggregate economic activities clearly have an effect upon interstate commerce, rendering the arbitration agreements in the present case subject to the Federal Arbitration Act.

¶ 22 II

¶ 23 Mutuality

¶ 24 Even though the arbitration agreements at issue in the present case are contracts evidencing interstate commerce and are subject to the Federal Arbitration Act, this conclusion does not end our analysis, because "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Section 2 of the Federal Arbitration Act allows a party to raise contract defenses if they are based "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). In the present case, the plaintiff maintains that the arbitration agreements are void and are not enforceable due to a lack of mutuality.

¶ 25 "In its most elemental sense, the doctrine of mutuality of obligation means that unless both parties to a contract are bound by its terms, neither is bound." *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 473, 809 N.E.2d 180, 193 (2004). " '[M]utuality of obligation in bilateral contracts is but another way of stating that consideration is essential.' " *Schwinder*, 348 Ill. App. 3d at 473, 809 N.E.2d at 193 (quoting 25 Richard Lord, Williston on Contracts § 67:42 at 332 (4th ed. 2002)). The parties to a contract do not have to have identical rights and obligations. *Hofmeyer v. Willow Shores Condominium Ass'n*, 309 Ill. App. 3d 380, 385, 722 N.E.2d 311, 315 (1999). "The mutuality requirement is satisfied if each party has given sufficient consideration for the other's promise." *Hofmeyer*, 309 Ill. App. 3d at 385, 722 N.E.2d at 315. "Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party *** or undertaken by the other." *City of Chicago Heights v. Crotty*, 287 Ill. App. 3d 883, 886, 679 N.E.2d 412, 414 (1997). If each party has given adequate consideration for the other's promise, the contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counterobligation or right in the other party. *Gordon v. Bauer*, 177 Ill. App. 3d 1073, 532 N.E.2d 855 (1988). "Mutuality becomes a nonissue when

-7-

consideration has otherwise been conferred upon one of the parties." *Carrico v. Delp*, 141 Ill. App. 3d 684, 687, 490 N.E.2d 972, 975 (1986). The mutual promises of the parties must be binding if no other consideration has been transferred. *Carrico*, 141 Ill. App. 3d at 687, 490 N.E.2d at 975. In other words, "where there is no consideration independent of the mutuality of obligation[,] then both parties to an agreement are bound or neither is bound." *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 28, 830 N.E.2d 619, 625 (2005).

¶ 26    In *Vassilkovska*, the court considered a stand-alone arbitration agreement and found mutuality to be lacking where the agreement required only one party to arbitrate. The plaintiff in *Vassilkovska* purchased a used automobile from the defendant and signed a sales contract for the purchase. In addition to the sales contract, the plaintiff also signed a separate arbitration agreement. In the arbitration agreement, the plaintiff agreed to waive her right to pursue any cause of action related to the sales agreement. The defendant, in turn, also agreed to waive the right to pursue any legal action but excluded a long list of potential claims. The plaintiff filed a complaint against the defendant, alleging fraud in the vehicle purchase, and the defendant moved to dismiss and compel arbitration pursuant to the arbitration agreement. The trial court denied the defendant's motion.

¶ 27    In affirming the trial court's order, the *Vassilkovska* court held that the arbitration agreement was a separate contract from the contract for the sale of the car and required its own consideration. *Vassilkovska*, 358 Ill. App. 3d at 25, 830 N.E.2d at 623-24. The court stated that there must be some detriment to the defendant, or some benefit to the plaintiff, that was bargained for in exchange for the plaintiff's promise to arbitrate all disputes. *Vassilkovska*, 358 Ill. App. 3d at 26, 830 N.E.2d at 624. The court found that there was no consideration for the plaintiff's agreement to arbitrate because the arbitration agreement did not contain a promise on the defendant's part to submit claims to arbitration. *Vassilkovska*, 358 Ill. App. 3d at 27, 830 N.E.2d at 625. Instead, the defendant exempted a host of issues from arbitration, primarily the issues involving the recoupment of money from the plaintiff. *Vassilkovska*, 358 Ill. App. 3d at 28, 830 N.E.2d at 626.

¶ 28    The court stated as follows: "The language of the Arbitration Agreement makes clear that its purpose is to force the plaintiff to arbitrate any claim she may assert against [the defendant], while excluding [the defendant] from that same promise." *Vassilkovska*, 358 Ill. App. 3d at 27, 830 N.E.2d at 625. Therefore, the court concluded that the separate arbitration agreement "itself did not contain consideration for the plaintiff's promise in the form of a promise by [the defendant] to submit disputes to arbitration." *Vassilkovska*, 358 Ill. App. 3d at 27, 830 N.E.2d at 625. "[W]here the agreement to arbitrate is itself a separate document, purporting to bind each party to the arbitration agreement, but subsequently creates a total exclusion of one party's obligation to arbitrate, the obligation to arbitrate is illusory and unenforceable." *Vassilkovska*, 358 Ill. App. 3d at 29, 830 N.E.2d at 626.

¶ 29    In the present case, the arbitration agreements are separate and apart from any other contracts. Accordingly, these stand-alone agreements must be supported by consideration or mutually binding agreements to arbitrate. The agreements provide that the parties agree to arbitrate their claims against the other, but the agreements exclude "any dispute where the amount in controversy is less than two hundred thousand ($200,000.00) dollars." We agree with the plaintiff that because the arbitration agreements do not apply to claims less than

$200,000, the defendant's promise to arbitrate is illusory. By excluding all claims but those $200,000 and greater from the requirements of the arbitration agreement, the defendant essentially ensured that none of its claims against Joyce would have to be arbitrated under the terms of the agreement. Instead, only Joyce's claims for personal injuries due to the defendant's improper or inadequate care would ever have to be arbitrated under the agreements. The defendant cannot offer any realistic scenario where the amount in controversy in disputes relating to the nonpayment of Joyce's care would equal or exceed $200,000. The arbitration agreements, therefore, do not contain mutually binding promises to arbitrate, but only a unilateral obligation on the part of Joyce to arbitrate her personal injury claims. The agreements, therefore, are not enforceable. See also *Gonzalez v. West Suburban Imports, Inc.*, 411 F. Supp. 2d 970, 972 (N.D. Ill. 2006) ("[A]lthough the Agreement purports to bind both parties to arbitrate disputes arising out of the transaction, the exceptions listed within the definition of 'dispute' leaves no claim that Defendant would be required to submit to arbitration. Thus, without the requisite mutual obligation to arbitrate, the agreement lacks consideration and is unenforceable.").

¶ 30                                              III

¶ 31                                   Wrongful Death Claim

¶ 32    The plaintiff also argues that the arbitration agreements do not apply to her claim under the Wrongful Death Act. She correctly notes that she is not a party to the agreements. Joyce signed one of the arbitration agreements herself, and the plaintiff signed the other agreement as Joyce's "Legal Representative." The plaintiff did not sign the arbitration agreement in her individual capacity.

¶ 33    While a wrongful death claim is derivative of the action the decedent would have had if the death had not occurred (*Limer v. Lyman*, 220 Ill. App. 3d 1036, 1042, 581 N.E.2d 411, 415 (1991)), it is also an independent claim designed to compensate the surviving spouse and the next of kin for the pecuniary losses resulting from the decedent's death. *In re Estate of Savio*, 388 Ill. App. 3d 242, 247-48, 902 N.E.2d 1113, 1119 (2009). Claims under the Wrongful Death Act are "those of the individual beneficiaries." *Wilbon v. D.F. Bast Co.*, 73 Ill. 2d 58, 68, 382 N.E.2d 784, 788 (1978).

¶ 34    In *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 940 N.E.2d 229 (2010), the wife of a deceased nursing home resident brought a wrongful death action against a nursing home. The wife had signed an arbitration agreement as "Resident Representative." The court held, "[The wife's] signature carries no legally binding weight regarding the arbitration of her personal claims against the nursing home under the Wrongful Death Act or the Family Expense Act." *Curto*, 405 Ill. App. 3d at 897, 940 N.E.2d at 236 (citing *Ward v. National Healthcare Corp.*, 275 S.W.3d 236 (Mo. 2009) (*en blanc*), and *Goliger v. AMS Properties, Inc.*, 19 Cal. Rptr. 3d 819 (Cal. Ct. App. 2004)). Likewise, in the present case, the agreement's use of the word "Legal Representative" under the plaintiff's signature made clear that she was not signing in her individual capacity or on her own behalf as a potential wrongful death plaintiff. Therefore, even if the arbitration agreements were valid, the plaintiff's signature on the May 20, 2005, agreement is not binding with regard to arbitration

of a wrongful death claim.

¶ 35                                    CONCLUSION

¶ 36        For the foregoing reasons, the circuit court's order denying the defendant's motion to compel arbitration is affirmed.

¶ 37        Affirmed.

¶ 38        JUSTICE SPOMER, concurring in part and dissenting in part.

¶ 39        I concur in that portion of the opinion in which the majority finds that the arbitration agreements in the present case evidence a transaction involving interstate commerce, and thus, I agree that the Federal Arbitration Act applies to the arbitration agreements at issue. In addition, I agree with the majority's conclusion that the plaintiff's signature as "Legal Representative" for the decedent on the May 20, 2005, agreement does not bind her to arbitrate her independent wrongful death claim. However, I respectfully dissent from the majority's conclusion that the arbitration agreements between the decedent and the defendant are unenforceable for a lack of mutuality. In the agreements at issue, both parties agreed to arbitrate all claims where the amount in controversy is greater than $200,000. Conversely, both parties retained the right to litigate all claims where the amount in controversy is less than $200,000. The promises made by both parties are equal.

¶ 40        I do not find the defendant's promise to arbitrate all claims where the amount in controversy is greater than $200,000 to be illusory. This case is distinguishable from *Vassilkovska* and *Gonzalez*, cited by the majority, in which the arbitration clauses at issue excluded all types of claims that the defendants in those cases would have against the plaintiffs, regardless of the amount in controversy. *Vassilkovska*, 358 Ill. App. 3d at 28 (the defendant exempted itself from arbitration by specifically securing its rights to seek assistance in a court of law for a host of issues); *Gonzalez*, 411 F. Supp. 2d at 972 (the exceptions listed within the definition of "dispute" left no claim that the defendant would be required to submit to arbitration).

¶ 41        Unlike *Vassilkovska* and *Gonzalez*, it is not impossible to conceive of situations where the defendant would be required to arbitrate its disputes against a signatory resident, including contract actions for unpaid bills and tort actions for personal injury or property damage where the amount in controversy exceeds $200,000. For example, in a case where a nursing home resident caused a fire, intentionally or unintentionally, the damages to the nursing home could easily exceed that amount. It is not the province of this court to determine the relative frequency of such claims but only to determine that both parties made promises to arbitrate. See *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 230 (2009) (" 'A contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counterobligation or right in the other party.' " (quoting *Piehl v. Norwegian Old Peoples' Home Society of Chicago*, 127 Ill. App. 3d 593, 595 (1984))).

¶ 42     For the foregoing reasons, I would affirm that portion of the circuit court's order which denied the motion to compel the arbitration of the plaintiff's wrongful death claim but would reverse that portion of the circuit court's order which denied the motion to compel the arbitration of the survival claims of the decedent, and I would remand with directions that the circuit court enter an order compelling the arbitration of those claims.