2024 IL App (4th) 221030

NO. 4-22-1030

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 13, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THOMAS KEY SR., as Independent Administrator of the | ) | Appeal from the |
| Estate of Lois Key, Deceased, | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Ford County |
| v. | ) | No. 22LA2 |
| ACCOLADE HEALTHCARE OF THE HEARTLAND, | ) | |
| LLC, d/b/a Accolade Healthcare of Paxton on Pells, | ) | Honorable |
| Defendant-Appellee. | ) | Matthew John Fitton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Lannerd and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Thomas Key Sr., as independent administrator of the estate of Lois Key, deceased, filed this nursing home negligence action against defendant, Accolade Healthcare of the Heartland, LLC, d/b/a Accolade Healthcare of Paxton on Pells. (Defendant asserts that plaintiff did not sue it by its correct legal name, and we have corrected the caption accordingly.) Plaintiff appeals an order dismissing all three counts of his complaint with prejudice and compelling arbitration of the claims. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3     Decedent, Lois Key, resided at defendant's nursing home facility before dying on July 20, 2020. On March 4, 2022, plaintiff filed a three-count complaint against defendant. Count I was filed pursuant to the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2022)) and the Survival Act (755 ILCS 5/27-6 (West 2022)). Count II was filed pursuant to the Wrongful

Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)). Count III realleged count I and then sought to recover decedent's funeral and burial expenses.

¶ 4　　　　　　　　A. Defendant's Motion to Dismiss and to Compel Arbitration

¶ 5　　　　　　　Pursuant to section 2-619(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a) (West 2022)), defendant moved to dismiss the action and to compel arbitration of all three counts of the complaint. Defendant argued that decedent agreed to arbitrate disputes as part of the documents she signed attendant to her residency at defendant's facility. According to defendant, the arbitration agreement was valid, and the issues in plaintiff's complaint fell within the scope of that agreement. Although defendant relied almost exclusively on Illinois caselaw in its motion, defendant maintained it was entitled to its requested relief under both federal and Illinois law. To that end, defendant cited both the United States Arbitration Act, as amended, most commonly referred to as the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)), and Illinois's Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2022)).

¶ 6　　　　　　　As "Exhibit B" to its motion, defendant attached a lengthy admission packet containing documents signed by decedent. Exhibit B includes an executed "Contract Between Resident and Facility." This contract contains the following arbitration provisions:

> "The Resident agrees to submit all claims or controversies arising out of or in any way relating to the Agreement, but not involuntary transfer and discharge proceedings, eviction proceedings, or matters that are properly filed in a small claims court or with the State Agency, in accordance with the Arbitration Agreement attached as Attachment E. Resident voluntarily agrees that execution of the Agreement [*sic*].

Pursuant to the Federal Arbitration Act *** and other applicable law, the parties agree to submit any dispute, claim, or controversy ('Dispute'), arising out of or relating to (i) this Agreement or any amendment to this Agreement or (ii) the breach, termination, enforcement, interpretation, or validity of this Agreement, including the determination of the scope or applicability of this agreement to arbitrate ('Arbitration Agreement'), to final and binding arbitration before one arbitrator. If such arbitrator finds any portion of this Arbitration Agreement unenforceable, that portion will not be effective and the remainder of this Arbitration Agreement will remain in effect. The Federal Arbitration Act will govern the proceedings and interpretation of this Arbitration Agreement. A party to the arbitration may enter a judgment on the arbitration award in any court of competent jurisdiction.

This Arbitration Agreement does not limit, impair, or waive any defenses of any party, including the statute of limitations, and nothing in this Agreement prevents you or any other person from contacting regulatory or administrative agencies in relation to services the Facility provides. This Arbitration Agreement binds all parties to this Agreement and their spouses, heirs, representatives, executors, administrators, successors, and assigns, as applicable. After this Agreement terminates, this Arbitration Agreement shall remain in effect for the resolution of all future Disputes between the parties."

¶ 7    The contract specifies that its term was one year, subject to automatic annual renewals, unless either party terminated the contract. Additionally, the contract would terminate upon decedent being transferred or discharged from the facility. In the event of decedent's death,

the contract would "terminate automatically," either when decedent's family removed her personal belongings from her room or 15 days after the death.

¶ 8    Attachment E to this contract is an arbitration and limitation of liability rider that decedent signed separately. This rider provides, in relevant portion:

"1. The parties agree the disputes identified in Article 2, below, between: a) the Resident or his/her spouse, heirs or assigns; and b) Facility or its affiliates, officers, directors, agents, license holders, managers, or employees, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law.

2. The disputes subject to arbitration in accordance with this Rider, include:

(a) all claims or controversies arising out of or in any way relating to the Agreement, but not involuntary transfer and discharge proceedings, eviction proceedings, or matters that are properly filed in a small claims court or with the State Agency;

(b) the Resident's stay at the Facility, but not administrative involuntary termination or involuntary transfer or discharge proceedings, eviction proceedings, or matters that are properly filed in a small claims court or with the State Agency;

(c) the services rendered for any condition, and any dispute arising out of the diagnosis, treatment, or care of the Resident;

(d) disputes involving amounts in controversy greater than $150,000.00; or

(e) disputes regarding interpretation of this Rider[.]

- 4 -

The enumerated disputes will be subject to this Rider whether arising out of State or federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted.

*The parties to this Rider further understand that Claims, including malpractice claims, cannot be brought in a lawsuit in court before a judge or jury and that a jury will not decide their case.*

3. This Rider shall be governed by and interpreted under the Federal Arbitration Act ***. In the event that it is determined that the [Federal Arbitration Act] is inapplicable, the parties desire that this agreement be interpreted under the applicable Illinois law so as to give effect to the parties' intent. Further, nothing in this Rider is to be construed to contradict any applicable Illinois statutory grievance or mediation procedure. ***

* * *

10. The arbitration proceedings shall be held in accordance with the rules and procedures as outlined in the National Arbitration Forum's Code of Procedure. In the event that the National Arbitration Forum is unable or unwilling to arbitrate the dispute, the parties agree that the dispute shall be arbitrated before a nationally recognized arbitration organization pursuant to its code of conduct.

11. The arbitrator's decision shall be final and binding without the right to appeal.

***

13. This Arbitration Provision *** shall survive the death of the Resident.

14. This Rider shall remain in effect after the expiration of the underlying Agreement and shall apply to all renewal Agreements." (Emphasis in original.)

¶ 9  Exhibit B to defendant's motion also contains numerous references to federal programs. However, Exhibit B does not indicate whether defendant ultimately received any payments through federal programs in connection with decedent's care. Additionally, there is a provision in the contract stating, "The Facility accepts Medicaid Recipients and individuals who qualify for assistance under the VA Program, but this does not in any way guarantee that the Resident with qualify [*sic*] or Facility will always be a participating provider in the programs." Another provision says that "[t]he Facility's present participation in the Medicare Program does not in any way guarantee that the Resident will qualify for Medicare or that the Facility will always be a participating provider in the Medicare Program."

¶ 10  Defendant did not submit any affidavits in support of its motion.

¶ 11  B. Plaintiff's Response to Defendant's Motion

¶ 12  Plaintiff opposed defendant's request for arbitration. According to plaintiff, *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, established that wrongful death claims are not assets of a decedent's estate and thus are not subject to an arbitration agreement signed by a decedent. Relying on *Carter*, plaintiff asserted that defendant could not compel arbitration of count II of his complaint.

¶ 13  With respect to counts I and III of his complaint, plaintiff invoked sections 3-606 and 3-607 of the Nursing Home Care Act (210 ILCS 45/3-606, 3-607 (West 2022)). Section 3-606 provides that "[a]ny waiver by a resident or his legal representative of the right to commence" a nursing home negligence action "shall be null and void, and without legal force or effect." 210

ILCS 45/3-606 (West 2022). Section 3-607 specifies that provisions in nursing home contracts waiving the right to a jury trial for negligence claims are "null and void, and without legal force or effect." 210 ILCS 45/3-607 (West 2022). Plaintiff conceded that these two statutes "might arguably be preempted by the Federal Arbitration Act." However, plaintiff contended that preemption did not apply here, as defendant failed to show that decedent's contract with defendant evidenced a transaction involving commerce. See 9 U.S.C. § 2 (2018) (stating that the Federal Arbitration Act applies to contracts "evidencing a transaction involving commerce"). Specifically, plaintiff argued that defendant failed to meet its burden under section 2-619 of the Code, as defendant "fail[ed] to present any argument or evidence, by affidavit or other evidentiary materials, to support that the agreement involves a transaction involving interstate commerce."

¶ 14                                  C. Defendant's Reply

¶ 15        In its reply brief, defendant again argued in support of its motion to dismiss that decedent's contract was valid and that plaintiff's claims were subject to arbitration. Defendant contended that the Federal Arbitration Act preempts sections 3-606 and 3-607 of the Nursing Home Care Act. However, defendant did not specifically address plaintiff's point about whether the decedent's contract evidenced a transaction involving commerce.

¶ 16        Defendant continued to maintain, without any additional argument, that plaintiff's wrongful death claim was subject to arbitration. Evidently as an alternative to that argument, defendant proposed that the trial court should stay litigation of count II of plaintiff's complaint while the parties arbitrated counts I and III.

¶ 17                                  D. The Trial Court's Ruling

¶ 18        On October 21, 2022, the trial court granted defendant's motion. The court found that decedent freely and voluntarily entered into a contract with defendant. Additionally, the court

noted that the contract unambiguously contained a mutual promise to arbitrate claims. Presumably referencing plaintiff's arguments based on sections 3-606 and 3-607 of the Nursing Home Care Act, the court asserted that the Federal Arbitration Act preempts state laws that invalidate arbitration agreements "simply because the[y] waive a party's right to file a lawsuit." The court found "a valid and enforceable agreement to arbitrate the claims at issue in Plaintiff's Complaint." Accordingly, the court dismissed the complaint with prejudice and compelled arbitration of all claims.

¶ 19                           E. Appeal and Abeyance

¶ 20          Plaintiff filed a timely notice of appeal. After the parties filed their briefs, on our own motion, we held consideration of the appeal in abeyance pending our supreme court issuing a decision in *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 210984, *appeal allowed*, No. 129067 (Ill. Jan. 25, 2023). We anticipated that the supreme court would address a disagreement within the appellate court as to whether an arbitration agreement in a nursing home contract is enforceable when the contract also contains a "termination-on-death" clause. Although the parties here have never raised this precise issue, given the parties' general dispute about the enforceability of the arbitration agreement that decedent signed, we deemed it provident to await a decision in *Clanton*.

¶ 21          On September 21, 2023, our supreme court filed its decision in *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067. The court made clear that arbitration contracts should be interpreted like any other contracts. *Clanton*, 2023 IL 129067, ¶ 30. According to the court, parties are free to draft a contract to exclude an arbitration provision from the contract's general termination-on-death provisions. *Clanton*, 2023 IL 129067, ¶ 35. In the present case, both the arbitration clause in the main body of the contract and the arbitration rider unambiguously state

- 8 -

that the arbitration agreement survives the termination of the contract. Thus, we saw no need to request additional briefing from the parties regarding the applicability of *Clanton*.

¶ 22                                    II. ANALYSIS

¶ 23         On appeal, plaintiff argues that the trial court erroneously granted defendant's motion to dismiss and to compel arbitration. The parties debate two issues: (1) whether the Federal Arbitration Act preempts sections 3-606 and 3-607 of the Nursing Home Care Act under the facts of this case, thus requiring arbitration of counts I and III of plaintiff's complaint, and (2) whether the wrongful death claim in count II is beyond the scope of any arbitration agreement signed by decedent.

¶ 24         " 'A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the trial court based on an affirmative matter, the exclusive remedy of arbitration.' " *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 28 (quoting *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21). In ruling on this motion, "the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Nord*, 2023 IL App (4th) 220669, ¶ 28. "We review the trial court's decision *de novo* because the court heard no evidence and considered only argument, which the parties restate on appeal." *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563, 567 (2009).

¶ 25                      A. Whether Decedent's Contract Evidenced a

Transaction Involving Commerce

¶ 26         The parties seem to agree that, unless preempted by federal law, sections 3-606 and 3-607 of the Nursing Home Care Act invalidate decedent's agreement to arbitrate the claims in counts I and III of plaintiff's complaint.

¶ 27 To come within the scope of the Federal Arbitration Act, a contract containing an arbitration agreement must evidence "a transaction involving commerce." 9 U.S.C. § 2 (2018). When a contract is subject to the Federal Arbitration Act, that act preempts state laws that discriminate specifically against arbitration agreements; however, a state law is not preempted if it applies equally to all contracts. *Kindred Nursing Centers L.P. v. Clark*, 581 U.S. 246, 251 (2017); 9 U.S.C. § 2 (2018) (specifying that contracts falling within the scope of the Federal Arbitration Act are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

¶ 28 In *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 50 (2010), our supreme court held that sections 3-606 and 3-607 of Illinois's Nursing Home Care Act are not " 'grounds as exist at law or in equity for the revocation of any contract.' " The effect of this holding is that if the Federal Arbitration Act applies in a given case, that act preempts sections 3-606 and 3-607. In rendering its decision, our supreme court "assume[d] *arguendo*" that the subject nursing home contract evidenced a transaction involving commerce and thus was subject to the Federal Arbitration Act. *Carter*, 237 Ill. 2d at 39. Our supreme court determined that the contract's connection to commerce was "an issue that should be addressed by the appellate court on remand." *Carter*, 237 Ill. 2d at 39.

¶ 29 On remand, the appellate court held, *inter alia*, that a detailed affidavit submitted by the defendant demonstrated the subject nursing home contract's connection to commerce. *Carter v. SSC Odin Operating Co.*, 2011 IL App (5th) 070392-B, ¶¶ 17-18. When the case subsequently returned to the supreme court on other issues, the plaintiff did not challenge the appellate court's determination about the contract's connection to commerce. *Carter*, 2012 IL 113204, ¶ 16. Thus, the supreme court again "proceed[ed] from the premise that, as held by the

appellate court and expressly stated in the arbitration agreements, the [Federal Arbitration Act] governs the agreements." *Carter*, 2012 IL 113204, ¶ 16.

¶ 30 Against this backdrop, plaintiff argues that the Federal Arbitration Act does not apply here—and thus does not preempt sections 3-606 and 3-607 of the Nursing Home Care Act in this case—as decedent's contract did not evidence a transaction involving interstate commerce. Specifically, plaintiff emphasizes that defendant failed to provide affidavits describing how the subject contract evidenced a transaction involving commerce. To that end, plaintiff notes that section 2-619(a) of the Code says that grounds for dismissal not appearing on the face of the complaint "shall be supported by affidavit." 735 ILCS 5/2-619(a) (West 2022). Plaintiff then emphasizes that, unlike the defendant in *Carter*, 2011 IL App (5th) 070392-B, ¶¶ 17-18, *rev'd in part*, 2012 IL 113204, defendant here did not provide an affidavit detailing the contract's connections to commerce. See *Fosler*, 398 Ill. App. 3d at 578 (likewise noting that the defendant filed an affidavit outlining the contract's specific connections to commerce).

¶ 31 In response to plaintiff's arguments, defendant notes that "the Federal Arbitration Act does not explicitly require an affidavit to satisfy the interstate commerce requirement." Defendant also mentions that decedent's arbitration agreement specified that it was governed by the Federal Arbitration Act. Furthermore, defendant contends that decedent's contract has at least "a slight nexus to" interstate commerce. Defendant reasons that "[t]he nursing home industry is heavily regulated by the federal government, and is involved in the expenditure of Medicaid funds, which are supplied by the federal government." Additionally, without citing the record, defendant asserts that it "receives out-of-state insurance payments as well as Medicare payments on behalf of residents, and purchases medical equipment and medical supplies from vendors outside of

Illinois." Defendant further notes that Exhibit B to its motion contained references to defendant accepting payments through Medicaid.

¶ 32       We hold that defendant's motion to dismiss and to compel arbitration did not comply with Illinois procedural law. Section 2-619(a) of the Code provides that grounds for dismissal not appearing on the face of the challenged pleading "shall be supported by affidavit." 735 ILCS 5/2-619(a) (West 2022). Defendant plainly did not comply with this requirement. In its appellee's brief, defendant does not argue that the subject nursing home contract's connection to commerce appears on the face of plaintiff's complaint. Yet defendant submitted no affidavit in support of its motion to dismiss and compel arbitration. While defendant asserts that the Federal Arbitration Act does not expressly require affidavits, that does not excuse defendant from complying with the rule of Illinois civil procedure that defendant invoked in seeking to dismiss the complaint. Additionally, whether the Federal Arbitration Act applies here is a disputed threshold issue.

¶ 33       Illinois courts that have addressed the commerce requirement have had the benefit of detailed affidavits specifying the agreements' particular connections to commerce. In *Fosler*, 398 Ill. App. 3d at 578, the defendant nursing home submitted an affidavit explaining that it (1) received Medicare and Medicaid benefits for 15% of its residents, (2) received out-of-state insurance payments and Medicare payments on behalf of the plaintiff, and (3) purchased supplies, equipment, and medication from out-of-state vendors. In *Carter*, 2011 IL App (5th) 070392-B, ¶¶ 17-18, the defendant nursing home submitted an affidavit attesting that (1) Medicare paid the defendant $8667.99 for the decedent's nursing care, (2) the defendant worked with an out-of-state intermediary company to procure those Medicare payments, (3) in a two-year period, the defendant

- 12 -

had received more than $9.3 million in Medicare and Medicaid funds, and (4) the defendant received supplies and services from out-of-state companies.

¶ 34 Here, by contrast, even though plaintiff argued below that defendant failed to demonstrate that the subject contract evidenced a transaction involving commerce, defendant did not address that issue until this appeal. We recognize that the Supreme Court of the United States has said Congress intended to exercise its "commerce power to the full" in enacting the Federal Arbitration Act. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). However, defendant has not demonstrated that the subject contract evidences a transaction involving commerce. Defendant cites Exhibit B to its motion in support of its assertion that it generally accepted payments through the Medicaid program. However, the record does not show what percentage of defendant's facility's residents were on Medicaid during the time period relevant to the complaint or how much money defendant received through Medicaid. Furthermore, the record does not indicate whether defendant ultimately received any payments through any federal programs in connection with decedent's care. The contract decedent signed specifically warned her there were no guarantees she would qualify for federal programs or that defendant's facility would continue to be a participating provider in federal programs. The record likewise does not indicate whether defendant contracted with out-of-state vendors to provide care for decedent. Thus, the factors that led the courts in *Carter*, 2011 IL App (5th) 070392-B, and *Fosler* to hold that specific nursing home contracts evidenced transactions involving commerce are absent from our record. It is inappropriate for this court to fill the evidentiary gap by making broad assumptions about the nursing home industry.

¶ 35 Defendant asserts that the documents decedent signed specified that the arbitration agreement was governed by the Federal Arbitration Act. However, defendant does not cite any

authority holding that this is dispositive of the issue of whether the contract evidences a transaction involving commerce. Defendant having failed to present a cogent argument on this point supported by citations to authority, we decline to hold that the contract decedent signed evidenced a transaction involving commerce merely because the contract referenced the Federal Arbitration Act. We note there is authority that could support an argument against defendant's position. For example, the nursing home contracts in both *Carter* and *Fosler* said that disputes would be governed by the Federal Arbitration Act, yet the reviewing courts looked to the facts established in affidavits when addressing whether the contracts evidenced transactions involving commerce. See *Carter*, 2011 IL App (5th) 070392-B, ¶¶ 4, 17-18; *Fosler*, 398 Ill. App. 3d at 565, 578. Additionally, the Supreme Court of the United States has described the connection to commerce as a "limitation[ ] on the enforceability of arbitration provisions governed by the Federal Arbitration Act." *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). There is some out-of-state authority directly holding that even where an agreement says it is governed by the Federal Arbitration Act, the party seeking to enforce arbitration still must prove the contract evidences a transaction involving commerce. *Hicks Unlimited, Inc. v. UniFirst Corp.*, 889 S.E.2d 564, 567-68 (S.C. 2023).

¶ 36        At oral argument, defendant's counsel raised some additional points that were neither argued below nor included in the appellee's brief. For example, counsel mentioned that plaintiff's complaint alleged that defendant violated a federal regulation. Illinois Supreme Court Rule 341(h)(7), (i) (eff. Oct. 1, 2020), which applies to both appellants and appellees, provides that parties may not raise new points at oral argument. Forfeiture aside, defendant still has not provided a persuasive excuse for failing to comply with section 2-619(a) of the Code. Certainly, defendant had the option of taking the approach of other nursing homes when invoking the Federal

Arbitration Act and submitting an affidavit outlining the contract's specific connections to commerce. See *Carter*, 2011 IL App (5th) 070392-B, ¶¶ 17-18; *Fosler*, 398 Ill. App. 3d at 578.

¶ 37     Accordingly, defendant has not demonstrated that the Federal Arbitration Act applies here to preempt sections 3-606 and 3-607 of the Nursing Home Care Act in this case. Thus, sections 3-606 and 3-607 of the Nursing Home Care Act invalidate any agreement signed by decedent to arbitrate the claims in counts I and III of plaintiff's complaint. Under these circumstances, we hold that the trial court erroneously dismissed and compelled arbitration of counts I and III.

¶ 38     B. Count II: The Wrongful Death Claim

¶ 39     The only other issue is whether count II of plaintiff's complaint, which alleges wrongful death, is subject to an arbitration agreement signed by decedent. In *Carter*, 2012 IL 113204, ¶ 57, our supreme court held that a wrongful death claim is not subject to an arbitration agreement signed by a decedent. This was so even though the arbitration agreement in *Carter* purported to bind the decedent's heirs and the executor of her estate. *Carter*, 2012 IL 113204, ¶ 56. Defendant argues that *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012) (*per curiam*), dictates a different result than *Carter*. However, our supreme court specifically considered and addressed *Marmet* in *Carter*. See *Carter*, 2012 IL 113204, ¶ 58 ("Defendant's reliance on the Supreme Court's recent decision in [*Marmet*], as a basis for compelling arbitration of the wrongful-death claim, is misplaced."). We have no authority to overrule our supreme court. *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Thus, count II of plaintiff's complaint is not subject to arbitration.

¶ 40     III. CONCLUSION

- 15 -

¶ 41　　　　　　For the reasons stated, we reverse the trial court's judgment and remand the cause to that court for further proceedings.

¶ 42　　　　　　Reversed and remanded.

*Key v. Accolade Healthcare of the Heartland, LLC*, 2024 IL App (4th) 221030

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Ford County, No. 22-LA-2; the Hon. Matthew John Fitton, Judge, presiding. |
| **Attorneys for Appellant:** | Jonathan T. Nessler, of the Law Offices of Frederic W. Nessler & Associates, Ltd., of Springfield, for appellant. |
| **Attorneys for Appellee:** | Karie J. Valentino, Siobhán M. Murphy, and Alishba N. Malik, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellee. |