# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Carter v. SSC Odin Operating Co.*, 2012 IL 113204

---

| | |
|---|---|
| Caption in Supreme Court: | SUE CARTER, Special Adm'r of the Estate of Joyce Gott, Deceased, Appellee, v. SSC ODIN OPERATING COMPANY, LLC, d/b/a Odin Healthcare Center, Appellant. |
| Docket No. | 113204 |
| Filed | September 20, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A wrongful death claim for the death of a nursing home resident did not accrue until she died and was not governed by an arbitration agreement that she had signed, but the Federal Arbitration Act was applicable and arbitration could be compelled under the agreement as to claims for negligence and statutory violations occurring while she lived. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Marion County, the Hon. David L. Sauer, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |

Counsel on
Appeal

W. Jeffrey Muskopf and Mark R. Feldhaus, of Lashly & Baer, P.C., of St. Louis, Missouri, and Malcolm J. Harkins III, and James F. Segroves, of Proskauer Rose, LLP, of Washington, D.C., for appellant.

Staci M. Yandle, of O'Fallon, for appellee.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, and Burke concurred in the judgment and opinion.

Justices Freeman and Karmeier took no part in this decision.

## OPINION

¶ 1    This appeal involves an arbitration agreement between plaintiff's decedent and defendant nursing home. At issue is whether the arbitration agreement is enforceable and, if so, whether plaintiff can be compelled to arbitrate a wrongful-death claim against defendant. The appellate court ruled in favor of plaintiff, holding that the arbitration agreement is unenforceable based on a lack of mutuality of obligation, and that the wrongful-death claim is not subject to arbitration in any event. 2011 IL App (5th) 070392-B, ¶¶ 29, 34. The appellate court thus affirmed the trial court's denial of defendant's motion to compel arbitration. *Id.* ¶ 36.

¶ 2    For the reasons that follow, we affirm in part and reverse in part the judgment of the appellate court, and remand to the trial court for further proceedings.

¶ 3                          BACKGROUND

¶ 4    Plaintiff, Sue Carter, as the special administrator of the estate of Joyce Gott, deceased, filed a complaint in the circuit court of Marion County against defendant, SSC Odin Operating Company, LLC, that does business as Odin Healthcare Center, a nursing home located in Odin, Illinois. Gott was a resident of the nursing home for a two-month period during 2005, and again in early 2006 until her death on January 31, 2006. In count I, a survival action (755 ILCS 5/27-6 (West 2006)), plaintiff alleged that defendant violated the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2006)) and, as a result, Gott sustained personal injury including gastrointestinal bleeding, anemia, and respiratory failure. In count II, a claim under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)), plaintiff sought damages for injuries sustained by Gott's heirs resulting from Gott's wrongful death.

¶ 5    Defendant filed a motion to compel arbitration, relying on two identical arbitration agreements executed at the time of Gott's 2005 and 2006 nursing home admissions. The

-2-

2005 agreement was signed by plaintiff as Gott's "Legal Representative." The 2006 agreement was signed by Gott herself. The parties agreed that, with respect to claims where the amount in controversy is at least $200,000,

> "they shall submit to binding arbitration all disputes against each other and their representatives, affiliates, governing bodies, agents and employees arising out of or in any way related or connected to the Admission Agreement and all matters related thereto including matters involving the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Illinois law were violated; any disputes relating to the payment or non-payment for the Resident's care and stay at the Facility; and any other dispute under state or Federal law based on contract, tort, statute (including any deceptive trade practices and consumer protection statutes), warranty or any alleged breach, default, negligence, wantonness, fraud, misrepresentation or suppression of fact or inducement."

¶ 6 The parties also agreed that defendant would pay the fees of the arbitrators; defendant would pay up to $5,000 of the resident's attorney fees and costs in claims against defendant; the resident would have the right to choose the location of the arbitration; and the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) (FAA) would govern the agreements.

¶ 7 After briefing, and without an evidentiary hearing, the trial court denied defendant's motion to compel arbitration. The trial court ruled that the agreements were unenforceable because they violated Illinois public policy and lacked mutuality of obligation; the wrongful-death claim was not arbitrable; and the agreements did not evince a transaction involving commerce within the meaning of the FAA. Defendant appealed. The appellate court affirmed the denial of defendant's motion to compel arbitration. *Carter v. SSC Odin Operating Co.*, 381 Ill. App. 3d 717 (2008).

¶ 8 The appellate court examined Illinois public policy as set forth in sections 3-606 and 3-607 of the Nursing Home Care Act, which provide that any waiver by a resident, or his legal representative, of the right to commence an action under the Nursing Home Care Act, or to a jury trial of such action, shall be "null and void." 210 ILCS 45/3-606, 3-607 (West 2006). The appellate court held that these antiwaiver provisions present a legitimate state law contract defense to the arbitration agreements that is not preempted by the FAA. *Carter*, 381 Ill. App. 3d at 722-23. We allowed defendant's petition for leave to appeal and reversed the judgment of the appellate court. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30 (2010). We held that the antiwaiver provisions of sections 3-606 and 3-607 of the Nursing Home Care Act are the functional equivalent of antiarbitration legislation, which is preempted by the FAA and Supreme Court precedent. *Id.* at 48-49 (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). We remanded the cause to the appellate court for consideration and resolution of the remaining issues on appeal. *Id.* at 51.

¶ 9 On remand, the appellate court again affirmed the trial court's denial of defendant's motion to compel arbitration. 2011 IL App (5th) 070392-B, ¶ 1. The appellate court first held

that the arbitration agreements evince a transaction involving interstate commerce, rendering them subject to the FAA. *Id.* ¶ 21. The appellate court next held, over a dissent, that defendant's promise to arbitrate was illusory, and that the arbitration agreements were thus unenforceable for lack of mutuality of obligation. *Id.* ¶ 29. The appellate majority explained:

> "By excluding all claims but those $200,000 and greater from the requirements of the arbitration agreement, the defendant essentially ensured that none of its claims against Joyce [Gott] would have to be arbitrated under the terms of the agreement. Instead, only Joyce's claims for personal injuries due to the defendant's improper or inadequate care would ever have to be arbitrated under the agreements. The defendant cannot offer any realistic scenario where the amount in controversy in disputes relating to the nonpayment of Joyce's care would equal or exceed $200,000. The arbitration agreements, therefore, do not contain mutually binding promises to arbitrate, but only a unilateral obligation on the part of Joyce to arbitrate her personal injury claims. The agreements, therefore, are not enforceable." *Id.*

The dissenting justice would not have found defendant's promise to arbitrate to be illusory, noting that a claim against a nursing home resident in excess of $200,000 could arise where, for example, the resident intentionally or unintentionally started a fire causing damage to the nursing home. *Id.* ¶¶ 40-41 (Spomer, J., concurring in part and dissenting in part).

¶ 10        The appellate court unanimously held, however, that even if the arbitration agreements are enforceable, plaintiff cannot be compelled to arbitrate the wrongful-death claim because plaintiff did not sign the arbitration agreement in her individual capacity. *Id.* ¶ 34. The appellate court disagreed with defendant that the "derivative" nature of a wrongful-death claim required a different result. *Id.* ¶¶ 33-34.

¶ 11        We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010).

¶ 12                                ANALYSIS
¶ 13                           I. Standard of Review
¶ 14        The facts relevant to defendant's motion to compel arbitration are not in dispute, and the trial court's decision denying defendant's motion was based on purely legal issues: (1) the enforceability of the arbitration agreement, and (2) the arbitrability of the wrongful-death claim, which raises issues of statutory construction. Accordingly, our review proceeds *de novo*. See *Royal Indemnity Co. v. Chicago Hospital Risk Pooling Program*, 372 Ill. App. 3d 104, 107 (2007); *Carter*, 237 Ill. 2d at 39.

¶ 15                          II. Mutuality of Obligation
¶ 16        The appellate court held that the arbitration agreements at issue here "evidence a transaction involving interstate commerce" and are thus governed by the FAA. 2011 IL App (5th) 070392-B, ¶¶ 16-21. Plaintiff did not seek review of that issue before this court. Thus, we will proceed from the premise that, as held by the appellate court and expressly stated in the arbitration agreements, the FAA governs the agreements.

¶ 17        Originally adopted in 1925, the FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Section 2 of the FAA provides in relevant part that:

> "A written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." (Emphasis added.) 9 U.S.C. § 2 (2012).

¶ 18        Thus, an arbitration agreement may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability, without contravening section 2. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). An arbitration agreement may not be invalidated, however, by a state law applicable *only* to arbitration agreements. *Id.*

¶ 19        Here, the state law contract defense on which the appellate court relied when it invalidated the arbitration agreements is a lack of mutuality of obligation. According to the appellate court, defendant's promise to arbitrate is illusory based on the $200,000 arbitration floor, rendering the arbitration agreements unenforceable for lack of a mutual promise to arbitrate. 2011 IL App (5th) 070392-B, ¶ 29.

¶ 20        "An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 909 (1994). Although defendant disputes that its obligation to arbitrate its claims against Gott is illusory, defendant's principal argument before this court is that mutuality of obligation is not essential to the validity of the arbitration agreements because Gott's promise to arbitrate is supported by other consideration. In other words, according to defendant, a lack of mutual promises to arbitrate will not destroy the validity of the arbitration agreements.

¶ 21        The concept of "mutuality of obligation" is intimately tied to the concept of "consideration." As this court explained:

> "While consideration is essential to the validity of a contract, mutuality of obligation is not. Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties or the contract falls for want of consideration, but where there is any other consideration for the contract mutuality of obligation is not essential." *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 108 (1921).

Accord *S.J. Groves & Sons Co. v. State of Illinois*, 93 Ill. 2d 397, 403-04 (1982), *overruled on other grounds by Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 79 (1985); *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 488 (1997). See also Restatement (Second) of Contracts § 79 (1981) ("If the requirement of consideration is met, there is no additional requirement of *** 'mutuality of obligation.' "); 3 Richard A. Lord, Williston on Contracts § 7:14, at 326-30 (4th ed. 2008) (mutuality of obligation is "simply an awkward way of stating that there must be a valid consideration").

¶ 22    These principles apply equally to arbitration agreements as they do to other types of contracts. In *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20 (2005), for example, the appellate court was presented with a challenge to an arbitration agreement similar to the challenge in the instant case. There, the plaintiff claimed that the defendant's promise to arbitrate was illusory, thus rendering the arbitration agreement unenforceable for lack of mutuality of obligation. *Vassilkovska* observed that mutuality of obligation is "nothing more than a proxy for consideration," and that the court would review the plaintiff's lack-of-mutuality challenge in terms of whether consideration existed for the parties' agreement to arbitrate. *Vassilkovska*, 358 Ill. App. 3d at 25 n.2. In *Vassilkovska*, however, the *only* consideration that could have supported the plaintiff's promise to arbitrate was the defendant's reciprocal promise, which the appellate court held was illusory. *Id.* at 29. Here, defendant argues that other consideration, apart from its own promise to arbitrate, supports Gott's promise to arbitrate her disputes with defendant. If defendant is correct that other consideration exists, we need not decide whether defendant's promise to arbitrate is illusory.

¶ 23    "Consideration" is the "bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *McInerney*, 176 Ill. 2d at 487 (citing Restatement (Second) of Contracts § 71 (1981)). "Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977). See also *Lipkin v. Koren*, 392 Ill. 400, 406 (1946) (consideration "consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other"). Thus, the enforceability of Gott's promise to arbitrate, rather than to litigate, her claims against defendant is dependent upon whether defendant suffered a detriment, or Gott received a benefit, in exchange for that promise. See *Vassilkovska*, 358 Ill. App. 3d at 26.

¶ 24    Principles of contract law do not require that the values Gott and defendant exchanged be equivalent. *Ryan v. Hamilton*, 205 Ill. 191, 197 (1903); *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 230 (2009). See also Restatement (Second) of Contracts § 79 (1981) ("[i]f the requirement of consideration is met, there is no additional requirement of *** equivalence in the values exchanged"); *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 180 (3d Cir. 1999) (observing that "state courts have concluded that an arbitration clause need not be supported by equivalent obligations"). Moreover, we will not inquire into the adequacy of the consideration to support a contract. *Gallagher v. Lenart*, 226 Ill. 2d 208, 243 (2007); *Ryan*, 205 Ill. at 197. "[A]dequacy of the consideration is within the exclusive dominion of the parties where they contract freely and without fraud." *Id.* at 198. See also 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts § 6.1, at 207 (rev. ed. 1995) (to the extent courts use the term mutuality of obligation to require something tending toward equivalence of obligation, this is " 'simply a species of the forbidden inquiry into the adequacy of consideration' " (quoting *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629 (Minn. 1983))).

¶ 25    Defendant contends that, apart from its own promise to arbitrate, Gott's promise to arbitrate is supported by the following consideration: defendant's promise to pay the

arbitrators' fees[1]; defendant's promise to pay $5,000 of Gott's attorney fees and costs in any action against defendant; and Gott's right to choose the location of the arbitration. In her brief before this court, plaintiff does not address defendant's contention that the foregoing provisions supply the consideration supporting Gott's promise to arbitrate. At oral argument, plaintiff addressed only the attorney fee provision in the arbitration agreement, noting that under the Nursing Home Care Act defendant is already required to pay attorney fees to a resident whose rights (as specified in part 1 of article II of the Act) are violated. See 210 ILCS 45/3-602 (West 2006). Thus, plaintiff argued that defendant's promise to pay $5,000 of Gott's attorney fees is no consideration. We disagree.

¶ 26    Under the Nursing Home Care Act, Gott would only be entitled to attorney fees if she prevailed in a claim against defendant. Under the arbitration agreements, however, Gott is entitled to a portion of her attorney fees even if defendant prevails. The contractual fee provision thus supplements the statutory fee provision, constituting a benefit to Gott and a detriment to defendant. Similarly, defendant's promise to pay the arbitrators' fees, and Gott's right to choose the location of the arbitration, each also constitute a benefit to Gott and a detriment to defendant.

¶ 27    Based on these contract provisions, we conclude that Gott's promise to arbitrate, even if not met with a reciprocal promise to arbitrate by defendant, is nonetheless supported by consideration. Thus, we hold, contrary to the appellate court judgment, that the arbitration agreements are enforceable. The state law contract defense of lack of mutuality of obligation is not available under the facts of this case.

¶ 28    In light of this holding, we necessarily consider defendant's further argument that the appellate court erred in holding that plaintiff is not required to arbitrate the wrongful-death claim.

¶ 29                          III. Wrongful-Death Action

¶ 30    The appellate court held that because plaintiff signed the agreement as Gott's legal representative, and not in her individual capacity or on her own behalf as a potential wrongful-death plaintiff, the arbitration agreement is not binding upon her with regard to the wrongful-death claim. 2011 IL App (5th) 070392-B, ¶ 34. As the appellate court succinctly stated, plaintiff "is not a party to the agreements." *Id.* ¶ 32. Thus, the appellate court's holding is based on a basic principle of contract law. See *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

¶ 31    Defendant does not dispute that plaintiff signed the agreement only on behalf of Gott, and conceded at oral argument that nonsignatories to a contract are typically not bound. Defendant, nonetheless, urges us to reverse the appellate court judgment, contending that the court's holding is based on a misunderstanding of the Wrongful Death Act. According to defendant, a wrongful-death action is an asset of the decedent's estate that the decedent can

---

[1]The arbitration agreements require that disputes be settled by a panel of three arbitrators.

limit during her lifetime. In this case, defendant continues, the decedent limited the forum in which the action could be heard. Defendant further argues that a wrongful-death action is derivative of, and thus limited to, what a decedent's cause of action against the defendant would have been had the decedent lived, and if the decedent's cause of action against the defendant would have been subject to arbitration, the wrongful-death claim against the defendant is likewise subject to arbitration. For these reasons, defendant contends that its motion to compel arbitration should have been granted. Because defendant's arguments focus on the nature of a wrongful-death action, we begin our analysis with an overview of the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)).

¶ 32    At common law, no cause of action existed to recover damages for the wrongful death of another, and a cause of action abated at the death of the injured party. *Williams v. Manchester*, 228 Ill. 2d 404, 418 (2008). Thus, " 'it was cheaper for the defendant to kill the plaintiff than to injure him.' " *Id.* (quoting Prosser & Keeton on Torts § 127, at 945 (W. Page Keeton *et al.* eds., 5th ed. 1984)). In 1853, however, the legislature adopted the Injuries Act (1853 Ill. Laws 97), now known as the Wrongful Death Act, creating a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of the death of the injured person. *Nudd v. Matsoukas*, 7 Ill. 2d 608, 612 (1956).

¶ 33    Section 1 of the Act provides in relevant part:

> "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages ***." 740 ILCS 180/1 (West 2006).

Although section 2 provides that every wrongful-death action shall be brought by and in the names of the "personal representatives" of the deceased, the action is filed for the "exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2 (West 2006). Thus, the personal representative in a wrongful-death claim is "merely a nominal party to this action, effectively filing suit as a statutory trustee on behalf of the surviving spouse and next of kin, who are the true parties in interest." *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (2002). See also *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 361 (1995) (statutory requirement that wrongful-death action be brought by and in the name of the personal representative serves to avoid a multiplicity of suits by the next of kin, and ensures that the interests of all the beneficiaries are protected).

¶ 34    A wrongful-death action is perhaps best understood when contrasted with an action under our so-called "Survival Act," now section 27-6 of the Probate Act of 1975. 755 ILCS 5/27-6 (West 2006). The Survival Act allows an action (such as a claim under the Nursing Home Care Act) to survive the death of the injured person. *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495, 503 (2011); *National Bank of Bloomington v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 160, 172 (1978). Whereas the Wrongful Death Act created a new cause of action that does not accrue until death, the Survival Act simply allows a representative of the decedent to maintain those statutory or common law actions that had already accrued to the

decedent prior to death. *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 410-12 (1989). In other words:

> "A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." *Id.* at 410.

With this background we turn to defendant's arguments.

¶ 35                           *Section 2.1 of the Wrongful Death Act*

¶ 36       Defendant directs our attention to section 2.1 of the Wrongful Death Act, which describes a wrongful-death action as an "asset" of the decedent's estate. 740 ILCS 180/2.1 (West 2006). Section 2.1 provides in pertinent part:

> "In the event that the only asset of the deceased estate is a cause of action arising under this Act, and no petition for letters of office for his or her estate has been filed, the court, upon motion of any person who would be entitled to a recovery under this Act, and after such notice to the party's heirs or legatees as the court directs, and without opening of an estate, may appoint a special administrator for the deceased party for the purpose of prosecuting or defending the action." 740 ILCS 180/2.1 (West 2006).

Based on this provision, defendant argues that the wrongful-death action plaintiff filed against it is an asset of Gott's estate that Gott could and did limit when she entered into the arbitration agreement. Plaintiff counters that a wrongful-death action does not belong to the decedent, noting that the proceeds of a wrongful-death action do not pass through the decedent's estate.

¶ 37       When construing a statute, the primary objective is to ascertain and give effect to the intent of the legislature, the language of the statute being the best indicator of such intent. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Words and phrases should not be considered in isolation. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Rather, the language in each section of the statute must be examined in light of the statute as a whole (*id.*), which is construed in conjunction with other statutes touching on the same or related subjects (*In re B.L.S.*, 202 Ill. 2d 510, 515 (2002)). Legislative intent may be ascertained not only by examining the statutory language, but by considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained. *People v. Lucas*, 231 Ill. 2d 169, 176 (2008).

¶ 38       Applying these principles in the present case, we observe that although section 2.1 plainly refers to a wrongful-death action as an "asset of the deceased estate" (740 ILCS 180/2.1 (West 2006)), the legislature does not treat a wrongful-death action like other assets of the deceased's estate. Pursuant to the Probate Act, assets of a deceased's estate are subject to the claims of creditors and chargeable with the expenses of estate administration. 755 ILCS 5/18-14 (West 2006). With respect to a testate estate, assets of a deceased's estate are distributed in accordance with the deceased's will (755 ILCS 5/4-13 (West 2006)), and in the case of an intestate estate, according to the rules of descent and distribution (755 ILCS 5/2-1 (West

-9-

2006)). These rules generally provide that an intestate estate is distributed one-half to the surviving spouse and one-half to the decedent's descendants *per stirpes*. *Id.*

¶ 39     Under the Wrongful Death Act, however, amounts recovered in a wrongful-death action are not made subject to the provisions of the Probate Act. Rather, such amounts shall be distributed "to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." 740 ILCS 180/2 (West 2006).

¶ 40     The import of the distribution provision in the Wrongful Death Act was recognized by this court just a few short years after the Act's adoption. At that time, the Act provided that amounts recovered "shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate." 1853 Ill. Laws 97, § 2. We observed:

> "The legislature intended that the money recovered should not be treated as a part of the estate of the deceased. They designed to exclude creditors from any benefit of it, and to prevent its passing by virtue of any provisions of the will of the deceased. The personal representative brings the action, not in right of the estate, but as trustee for those who had a more or less direct pecuniary interest in the continuance of the life of the deceased, and who had some claims, at least, upon his or her natural love and affection." *City of Chicago v. Major*, 18 Ill. 349, 358 (1857).

Although the Wrongful Death Act has undergone various amendments during its long history, this court's observation that the "legislature intended the money recovered should not be treated as a part of the estate of the deceased" remains true today by virtue of the Act's express directive, set forth in section 2, regarding distribution of amounts recovered under the Act.

¶ 41     Our analysis of the issue before this court is also informed by this court's opinion in *McDaniel v. Bullard*, 34 Ill. 2d 487 (1966). There we held that a pending action under the Wrongful Death Act does not abate upon the beneficiary's death, but is subject to the provisions of the Survival Act. *McDaniel*, 34 Ill. 2d at 490-91. Thus, under *McDaniel*, the right to receive wrongful-death benefits is an asset of the estates of the next of kin, should they die; it is not an asset of the estate of the decedent who is the subject of the wrongful-death action. *National Bank of Bloomington v. Podgorski*, 57 Ill. App. 3d 265, 267 (1978). *McDaniel* is consistent with our observation in *Major*, quoted above, that the "personal representative brings the action, *not in right of the estate*, but as trustee for those who had a more or less direct pecuniary interest in the continuance of the life of the deceased." (Emphasis added.) *Major*, 18 Ill. at 358.

¶ 42     We conclude that a wrongful-death action is not a true asset of the deceased's estate. That said, we are constrained to give effect to the statutory language in section 2.1. See *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 77 ("statute should be construed, if possible, so that no word is rendered meaningless or superfluous"). We find guidance in our appellate court's opinion in *In re Estate of Savio*, 388 Ill. App. 3d 242 (2009). There the appellate court considered whether an estate could be reopened following the discovery, after

additional autopsies of the decedent, of a wrongful-death action. The former executor of the decedent's estate, who was also the decedent's ex-husband, objected, arguing in relevant part that a wrongful-death action is not an asset of the decedent's estate and, therefore, the estate could not be reopened. See 755 ILCS 5/24-9 (West 2006) (providing that decedent's estate may be reopened "to permit the administration of a newly discovered asset").

¶ 43    To determine whether the wrongful-death action was an asset of the decedent's estate, the appellate court considered wrongful-death law in Illinois, including section 2.1 of the Wrongful Death Act, on which defendant here relies. The appellate court stated:

> "It is clear that under Illinois law, a wrongful death claim may only be brought by the personal representative of the decedent. See 740 ILCS 180/2 (West 2006); *Pasquale*, 166 Ill. 2d at 361 ***. Moreover, section 2.1 of the Wrongful Death Act specifically references a cause of action for wrongful death as being an asset of the decedent's estate. See 740 ILCS 180/2.1 (West 2006). *** The distinction to be made here is one of purpose. A wrongful death claim is not an asset of a decedent's estate for the purpose of whether it may be used to satisfy the claims of creditors of the estate. See *Berard v. Eagle Air Helicopter, Inc.*, 257 Ill. App. 3d 778, 781 *** (1994). However, a newly discovered wrongful death claim is an asset of a decedent's estate for the purpose of whether the estate may be reopened under section 24-9 [of the Probate Act] ***. See 740 ILCS 180/2.1 (West 2006). Therefore, we affirm the portion of the trial court's ruling granting the petition to reopen Savio's estate." *Savio*, 388 Ill. App. 3d at 248-49.

¶ 44    We agree with the *Savio* opinion that whether a wrongful-death action is an "asset of the deceased estate" (740 ILCS 180/2.1 (West 2006)) is a matter of "purpose." The language in section 2.1 of the Wrongful Death Act, and the language in the statute as a whole, does not evince an intent by the legislature to treat a wrongful-death action as an asset of the deceased's estate for the purpose defendant urges, *i.e.*, to allow the deceased to control the forum and manner in which a wrongful-death claim—in which the deceased has no interest—is determined. Rather, the statutory language indicates that the "asset" label adopted by the legislature is intended to facilitate the filing and prosecution of a wrongful-death claim. See also *In re Estate of Fields*, 588 S.W.2d 50, 54 n.2 (Mo. Ct. App. 1979) (applying Illinois law and observing that the reference in section 2.1 to a wrongful-death action as an estate asset is "simply legislative shorthand or acknowledgment of the procedural legal fiction that, after death, an administrator can be appointed only if there is an estate subject to possible administration," but "substantively the [wrongful-death] action is not a general asset of the decedent's estate").

¶ 45    To the extent the parties' arguments suggest that an ambiguity exists in section 2.1, we will consider legislative history. See *In re D.D.*, 196 Ill. 2d 405, 419 (2001) (noting that only when the meaning of an enactment cannot be ascertained from the language may a court resort to other aids for construction). Section 2.1 was adopted in 1977. Pub. Act 80-752 (eff. Sept. 16, 1977). Although this section was enlarged over the years, the language at issue here has remained intact since its adoption. Compare 740 ILCS 180/2.1 (West 2006), with Pub. Act 80-752 (eff. Sept. 16, 1977). The legislative history indicates that the intent of this new provision was to "make it more convenient" to bring a wrongful-death action, and "cut the

-11-

red tape" by permitting a court to appoint a special administrator who could prosecute the action without opening an estate. 80th Ill. Gen. Assem., House Proceedings, May 3, 1977, at 142 (statements of Representative Beatty). Representative Beatty's statements reinforce our conclusion that the legislature denominated a wrongful-death action an "asset of the deceased estate" for the primary purpose of facilitating the filing and prosecution of such an action.

¶ 46    For the foregoing reasons, we reject defendant's argument that the wrongful-death action filed by plaintiff is an asset of Gott's estate that she could limit via the arbitration agreement.

¶ 47    *Derivative Nature of Wrongful-Death Action*

¶ 48    In urging this court to hold that the wrongful-death action is subject to arbitration, defendant also relies on the so-called "derivative" nature of a wrongful-death action.

¶ 49    Liability under section 1 of the Wrongful Death Act "depends upon the condition that the deceased, at the time of his death, had he continued to live, would have had a right of action against the same person or persons for the injuries sustained." *Biddy v. Blue Bird Air Service*, 374 Ill. 506, 513-14 (1940). Accord *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995); *Williams*, 228 Ill. 2d at 421. If the deceased had no right of action at the time of his or her death, then the deceased's personal representative has no right of action under the Wrongful Death Act. *Id.*; *Biddy*, 374 Ill. at 514. In this sense, a wrongful-death action is said to be "derivative" of the decedent's rights. *Varelis*, 167 Ill. 2d at 454. The early case of *Mooney v. City of Chicago*, 239 Ill. 414 (1909), is illustrative.

¶ 50    In *Mooney*, the decedent, Edward Dillon, was injured while driving a wagon for his employer when the wagon hit a pothole. Dillon settled his personal injury action with his employer, releasing him from all liability. Following Dillon's death, allegedly from those injuries, the administrator of Dillon's estate filed a wrongful-death action against the city for maintaining the streets in a dangerous condition. The appellate court expressed the opinion that the release executed by Dillon had no relation to the case and was erroneously admitted into evidence. *Mooney*, 239 Ill. at 422. We disagreed, explaining that the administrator's right to maintain an action under the statute was dependent upon Dillon's right to sue the city at the time of his death, but "if Dillon had released the cause of action the statute does not confer upon his administrator any right to sue." *Id.* at 423. See also *Varelis*, 167 Ill. 2d at 456 (following *Mooney* and holding that a wrongful-death action could not be pursued where the decedent, during his lifetime, obtained a judgment in a personal injury action based on the same occurrence).

¶ 51    Although cases like *Mooney* and *Varelis* involve instances where the decedent's personal injury claim was settled in some manner during his lifetime, no legal significance attaches to the particular reason why a decedent's claim would have been barred had he or she lived. If the decedent could not have maintained a personal injury action at the time of death, then no wrongful-death action can be maintained based on that injury and the death that ensued. *Id.* at 460.

¶ 52    Defendant argues that just as a decedent's settlement of a personal injury action constitutes a complete bar to a wrongful-death action based on the same occurrence, Gott's

agreement to arbitrate disputes with defendant limits the wrongful-death action in the same manner. Defendant relies on case law from several of our sister states generally holding that because a wrongful-death action is derivative of the decedent's personal injury action, a wrongful-death action is subject to an arbitration agreement entered by the decedent. See *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 646-47 (Tex. 2009) (collecting cases).

¶ 53    Plaintiff argues that the derivative nature of a wrongful-death action does not mean that she is subject to any and all contractual limitations—such as an agreement to arbitrate—that are applicable to the decedent. See *Bybee v. Abdulla*, 189 P.3d 40, 46 (Utah 2008) (rejecting argument that because decedent is master of his personal injury action he may, by contract, expose his unwilling heirs to any imaginable defense to their wrongful-death action). Plaintiff further responds that, as a nonparty to the arbitration agreements, she cannot be made to arbitrate the wrongful-death action, which does not belong to Gott's estate. See *Finney v. National Healthcare Corp.*, 193 S.W.3d 393, 395 (Mo. Ct. App. 2006) (holding that decedent's daughter, who was a nonparty to the arbitration agreement, did not stand in the shoes of the decedent with respect to a wrongful-death action because such action did not belong to the decedent or decedent's estate).

¶ 54    Defendant overstates the significance of the derivative nature of a wrongful-death action. Although a wrongful-death action is dependent upon the decedent's entitlement to maintain an action for his or her injury, had death not ensued, neither the Wrongful Death Act nor this court's case law suggests that this limitation on the cause of action provides a basis for dispensing with basic principles of contract law in deciding who is bound by an arbitration agreement.

¶ 55    Arbitration is a "creature of contract" (*Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 74 (1998)), and under basic principles of contract law, only parties to the arbitration contract may compel arbitration or be compelled to arbitrate (*Gingiss International, Inc. v. Bormet*, 58 F.3d 328, 331 (7th Cir. 1995); *Vukusich v. Comprehensive Accounting Corp.*, 150 Ill. App. 3d 634, 640 (1986)). The FAA's policy favoring arbitration does not alter these principles. As the Supreme Court has stated:

> "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.' *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). *** 'Arbitration under the [FAA] is a matter of consent, not coercion.' *Id.*, at 479. *** It goes without saying that a contract cannot bind a nonparty." *Waffle House*, 534 U.S. at 293-94.

See also *Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir. 1997) ("the federal policy favoring arbitration applies to issues concerning the scope of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place" (emphasis omitted) (citing *McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994)).

¶ 56    In the present case, although the arbitration agreements purport to bind not only Gott, but also her "successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives,

including the personal representative or executor of *** her estate," no dispute exists that the only parties to the agreements are Gott and defendant. Although plaintiff signed the 2005 arbitration agreement, she did so only as Gott's legal representative. Accordingly, plaintiff is bound to arbitrate only to the extent that plaintiff is acting in Gott's stead.

¶ 57     For purposes of count I of the complaint, which alleges a violation of the Nursing Home Care Act by defendant pursuant to our survival statute, plaintiff is bound to arbitrate that claim, which had already accrued to Gott prior to death and which is brought for the benefit of Gott's estate. For purposes of count II, the wrongful-death action, plaintiff is not acting in Gott's stead. As already discussed, a wrongful-death action does not accrue until death and is not brought for the benefit of the decedent's estate, but for the next of kin who are the true parties in interest. Plaintiff, as Gott's personal representative in the wrongful-death action, is merely a nominal party, effectively filing suit as a statutory trustee on behalf of the next of kin. See *Glenn*, 198 Ill. 2d at 583. Plaintiff is not prosecuting the wrongful-death claim on behalf of Gott, and thus plaintiff is not bound by Gott's agreement to arbitrate for purposes of this cause of action.

¶ 58     Defendant's reliance on the Supreme Court's recent decision in *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. ___, 132 S. Ct. 1201 (2012) (*per curiam*), as a basis for compelling arbitration of the wrongful-death claim, is misplaced. *Marmet* involved three negligence suits against nursing homes in West Virginia. In each case a family member of the deceased patient signed an agreement that contained an arbitration clause. The West Virginia Supreme Court held that the FAA does not preempt that state's public policy against predispute arbitration agreements that apply to personal injury or wrongful-death claims against nursing homes, and thus, the arbitration clauses would not be enforced. *Id.* at ___, 132 S. Ct. at 1203. In two of the cases, the West Virginia court proposed an alternative holding, namely, that the arbitration clauses were unconscionable. *Id.* at ___, 132 S. Ct. at 1204.

¶ 59     The Supreme Court vacated the West Virginia decision. *Id.* at ___, 132 S. Ct. at 1202. Noting that the FAA's text includes no exception for personal injury or wrongful-death claims, the Supreme Court held that "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA." *Id.* at ___, 132 S. Ct. at 1203-04. Unclear as to the extent the West Virginia court's alternative holding was influenced by its invalid, categorical antiarbitration rule, the Supreme Court remanded the case so that the West Virginia court could consider whether the arbitration clauses were unenforceable under state common law principles that are not specific to arbitration and preempted by the FAA. *Id.* at ___, 132 S. Ct. at 1204.

¶ 60     Our holding in the present case that plaintiff, as a nonparty to the arbitration agreements, cannot be compelled to arbitrate a wrongful-death claim that does not belong to the decedent is not contrary to *Marmet*. Our holding, unlike the West Virginia court's holding, is not based on a categorical antiarbitration rule; it is based on common law principles governing all contracts. *Marmet* recognized the significance of common law contract defenses when it returned that case to the West Virginia court to consider the validity of the arbitration clauses

under that state's common law. Moreover, *Marmet* noted that the FAA " 'requires courts to enforce the bargain *of the parties* to arbitrate.' " (Emphasis added.) *Id.* at ___, 132 S. Ct. at 1203 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). Plaintiff here is not a party to the bargain to arbitrate.

¶ 61    We agree with the decision of the courts below that plaintiff cannot be compelled to arbitrate the wrongful-death claim against defendant.


¶ 62                                         CONCLUSION

¶ 63    For the reasons stated, we affirm in part and reverse in part the judgment of the appellate court, and remand this cause to the trial court for further proceedings.


¶ 64    Affirmed in part and reversed in part.

¶ 65    Cause remanded.