2021 IL App (2d) 200616-U
No. 2-20-0616
Order entered March 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JAKE PETRY, PCO HOMES, LLC, and PETRY HOME BUILDER, nominally, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20-L-192 |
| JENNIFER JEFFREY, JOSH PETRY, PETRY HOMEBUILDERS, LLC, JEFF PETRY, Individually and as trustee of THE PETRY TRUST 1989, VULCAN BUILDING, LLC, And SECURITY FIRST TITLE CO. | ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Jake Petry, Plaintiff and Counterdefendant-Appellant; Jennifer Jeffery and Josh Petry, Defendants and Counterplaintiffs-Appellees). | ) ) ) | Honorable Donna R. Honzel, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's order staying arbitration was not void for lack of personal jurisdiction due to failure to join necessary parties because their interests were adequately represented; the trial court properly granted a preliminary injunction staying arbitration where a subsequent agreement relating to the same subject matter superseded the agreement containing the arbitration clause. The trial court is affirmed.

¶ 2      This interlocutory appeal arises from the trial court's granting the motion of cross-plaintiffs, Jennifer Jeffrey and Josh Petry, to stay arbitration of claims asserted by cross-defendant, Jake Petry. On appeal, Jake argues, 1) the trial court's order staying the arbitration is void because the court did not have personal jurisdiction over Byard Holdings or the Byard Trust, 2) the trial court erred by ruling that the arbitration claims were subject to that parties' memorandum of understanding (MOU) without first finding that the arbitration agreement had been revoked, and 3) the trial court applied the wrong standard in ruling that the arbitration must be stayed. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                A. The Parties Involved

¶ 5      This appeal involves the aftermath of the breakup of a family business and where to litigate the parties' claims. For many years, Jeff Petry and his children, Jennifer Jeffery (Jenn), Josh Petry, and Jake Petry, engaged in the business of residential home construction and ownership of residential houses. PCO Homes, LLC (PCO), is a limited liability company with its principal place of business in Belvidere, Illinois. Petry Home Builders, LLC (Petry Home Builders), is an Illinois limited liability company. The members of Petry Home Builders are Jake, Jenn, Josh, and Jeff, individually and as trustee of the Petry Trust No. 1989. Byard Holdings, LLC (Byard Holdings), is a North Dakota limited liability company that was organized to own, develop, and lease commercial real estate. The members of Byard Holdings were Jake, Jenn, and Josh. Jake lived in North Dakota for several years running the operations of Byard Holdings. Vulcan Building, LLC, was formed by Jenn and Josh.

¶ 6                        B. Byard Holdings Agreement to Arbitrate

¶ 7 In June 2013, Jake, Jenn, and Josh, signed the "Member Control Agreement of Byard Holdings, LLC" (Byard Holdings agreement). The Byard Holdings agreement provides in relevant part:

"7.5 Arbitration. Any controversy or dispute *** arising out of or relating to this Agreement shall be settled or made by binding arbitration in Williston, North Dakota, pursuant to the North Dakota Uniform Arbitration Act or other applicable North Dakota Law, and where not inconsistent, in accordance with the Commercial Arbitration Rules of the American Arbitration Association now or hereafter in effect.

***

14.3 Amendment. This Agreement shall not be amended nor any rights under this Agreement shall be waived except by written document signed by the Company and all of the Members."

¶ 8                    C. Memorandum of Understanding

¶ 9 On July 9, 2019, Jeff, Jenn, Josh, and Jake met to equitably divide their business interests and resolve all disputes between themselves through a "Memorandum of Understanding" (MOU). The parties included Jake, Josh, Jenn, individually, and Jeff, individually and as trustee of the Petry Trust 1989, Petry Home Builders, and LLC, Hillside 2017, LLC. The recitals, which were incorporated into the MOU, stated "The Parties desire to equitably divide their interests and resolve all disputes by and between themselves in their individual and business capacities[.]" Paragraph 2 provided:

"Binding Effect: This MOU shall be binding upon and shall inure to the benefit of the Parties and each of their respective predecessors, successors and assigns. The MOU shall also be binding on the affiliates of each party."

Paragraphs 4 and 5 provided:

"4. Governing Law: This MOU shall be construed in accordance with the laws of the State of Illinois. Any disputes from or relating to this MOU shall be litigated in the federal or state courts situated in the County of Winnebago, State of Illinois.

5. Agreement: This MOU covers the entire understanding of the Parties hereto, superseding all prior agreements or understandings relating to any of the subject matters hereof and no modification or amendment of its terms and conditions shall be effective unless in writing and signed by the Parties or their respective duly authorized agents."

The MOU provided that the parties acknowledged that Petry Home Builders had 72 homes under construction and "various vacant lots." The parties agreed to divide these properties based on exhibits A and B, respectively. Jake, Jenn, and Josh agreed to divide their "various rental properties based on Exhibit C."[1] The MOU was signed by Jake and Josh, individually, Jeff, individually and as trustee of the Petry Trust 1989, and Jenn, individually and as manager of Hillside 2017 LLC and Petry Home Builders.

---

[1] These exhibits are attached to the MOU and contain charts. Exhibit A contains nine charts; each named, for example, "Burled Woods," "Arbor View," or "Creek Ridge." Under each name, there are three columns containing each siblings' name and underneath each siblings' name there are boxes containing numbers. Exhibit B is similar to exhibit A except it contains a column for Jeff and it contains many more numbers than exhibit A. Exhibit C contains only the siblings' names and appears to contain addresses.

¶ 10                                    D. Arbitration Claims

¶ 11    In February 2020, Jake and the Byard Trust commenced proceedings before the American Arbitration Association (AAA), requesting arbitration in North Dakota, in accordance with the terms of the Byard Holdings agreement. The request for arbitration indicates that the complaint was against Jenn, Josh, and Byard Holdings. The request describes the dispute as 1) failure of Byard Holdings to repay a loan from the Byard Trust, 2) dissipation of assets by members, and 3) failure of members to transfer title to properties to Jake.

¶ 12                                    E. Jake's Complaint

¶ 13    In May 2020, Jake and PCO filed a verified complaint against Jenn, Josh, Jeff, Petry Home Builders, Vulcan Building, LLC, and Security First Title Company alleging, in part, the following. The Byard Trust is a living trust for which Jake is the sole trustee and beneficiary. The Byard Trust loaned Byard Holdings $1.7 million. When Byard Holdings was incorporated, Jake was the only member. Jenn and Josh became members in 2013. Jake lived in North Dakota for a number of years to oversee the construction of residences. After Jake finished his work in North Dakota, Jake, Jenn, and Josh resumed their business of building new homes in northern Illinois and Wisconsin through Petry Home Builders. The $1.7 million loan from the Byard Trust to Byard Holdings remained unpaid and is the subject of binding arbitration in North Dakota along with Jake's claims for the turnover of certain deeds and the dissolution of Byard Holdings. Jake alleged breach of contract, breach of fiduciary duty, and sought specific performance of the MOU. Jake sought, among other things, to dissolve Petry Home Builders and to release funds in escrow from the sale of properties identified as Jake's in the MOU that Jenn and Josh refused to allow to go through unless portions of the proceeds were paid to them.

¶ 14    Jake also alleged the following:

"19. In July of 2019, Jake, Jenn, Josh and Jeff met to discuss dissolution of Petry Home Builders, transfer of certain home assets back to Jake, a reconciliation of amounts owed to Jake and a division of assets among Jake, Jenn and Josh of Petry Home Builders *and Byard Holdings*, among other things. \*\*\* The corporate attorney of Petry Home Builders and *Byard Holdings*, from Hinshaw Culberston, was present at the meeting.

20. In connection with the meeting, a memorandum of understanding was entered into on July 9, 2019[,] with respect to each individual's respective obligations, as well as *Byard Holdings* and Petry Home Builders (the 'MOU'). A true and correct copy of the MOU is attached hereto as Exhibit 1.

\* \* \*

24. The properties identified in Exhibits A, B and C to the MOU allocated under Jake's name are referred to collectively as the 'Jake Properties'. [*sic*] The properties identified in Exhibits A, B and C to the MOU allocated under Jenn's name are referred to collectively as the 'Jenn Properties'. [*sic*] The properties identified in Exhibits A, B and C to the MOU allocated under Josh's name are referred to collectively as the 'Josh Properties'. [*sic*]

\* \* \*

28. Three days after signing the MOU, Jenn and/or Josh formed Vulcan Building for Jenn and Josh to operate their own home building, real estate and property management business. In or around September 2019, Jenn and Josh transferred the Jenn Properties and Josh Properties out of Petry Home Builders and *Byard Holdings*. Jenn and Josh have, upon information and belief, removed their properties designated as Jenn Properties and Josh

Properties under the MOU from Byard Holdings and Petry Home Builders and transferred said properties to Vulcan and/or entities owned and controlled by Jenn and Josh ***.

* * *

32. However, Jenn and Josh refused to sign over the deeds [to Jake] which are currently held by Petry Home Builders. As such, Jake was unable to execute loan and security/mortgage documents to take over his one-third of the loan obligations and the deeds to the Jake properties.

37. In addition, all construction costs on other Jake Properties are being demanded by Jenn and Josh to be paid by Jake, but Jenn and Josh refuse to execute deeds to those properties to Jake.

* * *

58. The Jake Properties identified in Exhibit[s] A, B and C of the MOU are titled to Petry Home Builders and *Byard Holdings*." (Emphases added.)

¶ 15          F. Jenn & Josh's Counterclaim and Motion to Stay Arbitration

¶ 16    In June 2020, Jenn and Josh filed a counterclaim against Jake seeking injunctive relief to stay the arbitration and a declaratory judgment that the Byard Trust and Jake were bound by the MOU and that the MOU supersedes or replaces the Byard Holdings agreement.

¶ 17    In June 2020, Jenn and Josh also filed a "Motion to Stay Arbitration and for Temporary Restraining Order and Preliminary Injunction." Jenn and Josh sought a temporary restraining order and preliminary injunction enjoining Jake from proceeding with the arbitration or staying the arbitration until the court fully and finally resolves Jenn and Josh's request to stay arbitration.

¶ 18    The motion alleged that Jake's arbitration "claims clearly arise under or relate to the MOU." Attached to the motion are the affidavits of Jenn and Josh wherein they attested,

"In a motion submitted to the AAA in connection with the Arbitration, Jake represented: 'In July 2019, the parties entered into a Memorandum of Understanding *** for the purpose of splitting assets of *Byard Holding, LLC* and Petry Home Builders, LLC so that the corporations could be dissolved and each member could operate their new respective businesses independent of each other. Subsequent to the execution of the MOU, Jake and [Jenn and Josh's] relationship deteriorated. [Jenn and Josh], having a two-thirds vote, are able to conduct business under both Byard Holdings, LLC and Petry Home Builders, LLC. However, being outnumbered by his brother and sister, [Jake] is unable to conduct business, collect rental income for the properties, or effectuate sales of homes that were to be distributed to Jake under the MOU.' " (Emphasis added.)

¶ 19    The trial court issued a temporary restraining order and set the matter for a preliminary injunction hearing. On August 21, 2020, the court held a hearing on Jenn and Josh's motion for a preliminary injunction. Prior to hearing evidence, the court agreed with counsel for Jake that the narrow issue to be decided was whether there was an agreement between the parties to arbitrate the dispute at issue.

¶ 20    At the hearing, attorney Art Kielty, who represented Jeff at the July 2019 meeting regarding the MOU, testified as follows. The MOU was drafted throughout the hours of the meeting. The purpose of the meeting was to "get the parties in the same room and equitably divide all the business interests that the families had and resolve all of the disputes that they had between them so they could move on with their lives." A loan from Jake was discussed and because of these discussions, allocations were made to resolve the conflict over that loan. Kielty was the primary drafter of the MOU but everyone present had input in drafting the MOU.

¶ 21    Jenn testified as follows. The resolution of Jake's loan from the Byard Trust to Byard Holdings was discussed at the meeting and was addressed in the section of the MOU labeled, "Jake Petry Reconciliation." Jake, Jenn, and Josh discussed assets of Byard Holdings that are not mentioned in the MOU, such as inventory, equipment, and vehicles, which they decided could be easily worked out and divided equally among them. Exhibit A to the MOU included lots that "were owned strictly by Byard Holdings." These lots were divided up among Jake, Jenn, and Josh. Exhibit C was the rental properties owned by Byard Holdings and the exhibit divides the properties among the siblings. There were also vacant lots that were owned by Byard Holdings and divided among the siblings. Jenn identified the properties listed in the exhibits that were owned by Byard Holdings. She and Josh indicated at the meeting that they did not want to go to North Dakota for arbitration, so they could take care of things in Illinois. Jenn agreed that she did not sign the MOU as a member of Byard Holdings although she could have. Jenn testified that all the members of Byard Holdings were at the meeting and signed the MOU.

¶ 22    Jake, who was also present at the meeting that resulted in the MOU, testified as follows. Jake participated in negotiating the MOU, and it was valid, binding, and enforceable, as he indicated in his verified complaint. He also agreed that some of Byard Holdings' assets were discussed and agreed upon in the MOU, but the MOU did not include all of Byard Holdings' assets, such as certain land, materials, and vehicles. All three members of Byard Holdings, Jake, Jenn, and Josh, signed the MOU. The siblings divided the Byard Holdings' rental properties, houses, and other properties by drawing them from a hat. Repayment of the loan from the Byard Trust to Byard Holdings was not discussed at the meeting. Jake did not present a copy of the trust to the court. Jake agreed that everything in his verified complaint is true and accurate.

¶ 23 On September 22, 2020, the trial court issued a written memorandum of decision and order. The order granted preliminary injunctive relief and stayed the arbitration. On October 22, 2020, Jake filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1). Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 24                                    II. ANALYSIS

¶ 25                               A. Necessary Parties

¶ 26 Jake argues that the trial court's order staying arbitration is void because the court did not have personal jurisdiction over Byard Holdings or the Byard Trust. Jake contends that Byard Holdings and the Byard Trust were necessary parties to the action because the entities are materially affected by the trial court's order staying arbitration. Jenn and Josh counter that Byard Holdings and the Byard Trust were not necessary parties, and even if they were, their interests were adequately represented by their members.

¶ 27 An order entered by a court without jurisdiction over a necessary party is void. *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37 (1995), *aff'd as modified*, 173 Ill. 2d 235 (1996). A necessary party is one with a legal or beneficial interest in the litigation that will be affected by the court's actions. *Caparos v. Morton*, 364 Ill. App. 3d 159, 175 (2006). A party is necessary when its presence is required for one of three reasons: (1) to protect its interest in the controversy that would be materially affected by a judgment entered in its absence; (2) to reach a decision protecting the interests of the parties already before the court; or (3) to allow the court to completely resolve the controversy. *Zurich Insurance Co.*, 275 Ill. App. 3d at 37. Thus, a person or entity need not be joined if the person or entity share the same interests as some party appearing before the court and that party is able to protect the interests of the absent person or entity. *Cameron v. Bartels*, 214 Ill. App. 3d 69, 76 (1991).

¶ 28    Here, Byard Holdings' interests were adequately represented in this matter because all the members of the company, Jake, Jenn, and Josh, were named parties who appeared before the court, were represented by counsel, and were present at the evidentiary hearing. Further, the Byard Trust's interests were adequately represented because Jake, its sole trustee and beneficiary, was a named party who appeared before the court, was represented by counsel, and appeared at the evidentiary hearing. Most importantly, Jake shared the same interests as the absent entities, Byard Holdings and the Byard Trust. For these reasons, Byard Holdings and the Byard Trust were not necessary parties and, thus, the court's judgment is not void for failure to join these entities.

¶ 29         B. The Memorandum of Agreement v. The Byard Holdings Agreement

¶ 30    Next, defendant asserts that the trial court erred by ruling that the arbitration claims were subject to the parties' MOU without first finding that the arbitration agreement had been revoked.

¶ 31    In an interlocutory appeal the scope of review is normally limited to an examination of whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. *ACME-Wiley Holdings, Inc. v. Buck*, 343 Ill. App. 3d 1098, 1103 (2003). Where the question presented is one of law, a reviewing court determines it independently of the trial court's judgment. *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996). Arbitration is a creature of contract law. *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 55. Only parties to an arbitration contract may compel arbitration or be compelled to arbitrate. *Id.* The subjects of arbitrability and the interpretation of contracts are questions of law. *City of Rockford v. Unit Six of Policemen's Benevolent and Protective Ass'n of Illinois*, 351 Ill. App. 3d 252, 256 (2004). Therefore, our standard of review is *de novo*.

¶ 32    Under the Uniform Arbitration Act, upon application of a party, the trial court is authorized, *inter alia*, to compel or stay arbitration or to stay a court action pending arbitration. 710 ILCS 5/2

(West 2018); *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443-44 (1988). In such a proceeding, the sole issue before the trial court is the very narrow determination of whether there is an agreement between the parties to arbitrate the dispute in question. *Donaldson*, 124 Ill. 2d at 444. Section 2(b) of the Illinois Uniform Arbitration Act provides:

> "On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and *bona fide* dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." 710 ILCS 5/2 (West 2018).

Thus, if the dispute clearly falls within the arbitration agreement the court should order arbitration, but if it is clear that the dispute does not, "arbitration should be refused." *Donaldson*, 124 Ill. 2d at 444.

¶ 33    Here, Jenn and Josh denied the enforceability of the Byard Holdings agreement. They claimed that it was superseded by the MOU. Indeed, the MOU, executed after the Byard Holdings agreement, provided "This MOU covers the entire understanding of the Parties hereto, superseding all prior agreements and understandings relating to any of the subject matters hereof[.]"

¶ 34    Jake's testimony and verified complaint established that the MOU was meant to and did bind the parties, including those provisions regarding Byard Holdings. The parties agreed that the MOU contained the division of Byard Holdings' properties among the parties. Although the MOU is not signed by Byard Holdings, the MOU provides that it "shall be binding on the affiliates of each party." The word "affiliates" is not defined in the MOU; however, we note that Black's Law Dictionary defines "affiliate" as "a condition of being united; being in close connection, allied, associated, or attached as a member or branch." Black's Law Dictionary 63 (8th ed. 2004). Jake,

Jenn, and Josh were the only members of Byard Holdings and they all signed the MOU. As noted, the MOU was executed after the Byard Holdings agreement and, by its terms, "covers the entire understanding of the parties [and supersedes] all prior agreements and understandings." In other words, the MOU superseded the Byard Holdings agreement and its arbitration clause. Further, the matters Jake presented to the AAA related to the MOU.

¶ 35    In the present case, the record does not contain the actual arbitration complaint. However, the arbitration request describes the dispute as 1) failure of Byard Holdings to repay a loan from the Byard Trust, 2) dissipation of assets by Byard Holdings' members, and 3) failure of Byard Holdings' members to transfer title to properties to Jake.

¶ 36    Although Illinois favors arbitration (*Phoenix Insurance Co., v. Rosen*, 242 Ill. 2d 48, 59 (2011)), it is a creature of contract law and thus, only parties to the arbitration contract may compel arbitration or be compelled to arbitrate (*Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 55).

¶ 37    Regarding the first claim, the Byard Trust was not a party to the arbitration agreement. Therefore, the Byard Trust may not compel arbitration. See *id.* Further, the second and third disputes relate to the MOU and, according to the MOU, "shall be litigated in the federal or state courts situated in the County of Winnebago, State of Illinois." Because Jenn and Josh have not agreed to arbitrate the matters Jake raised in his AAA claim, they cannot be compelled to do so. See *Carter*, 2012 IL 113204, ¶ 55. Accordingly, the trial court properly determined that Jake's arbitration claims were subject to that parties' MOU and not the Byard Holdings agreement because the MOU superseded the Byard Holdings agreement.

¶ 38                    C. The Standard Applied by the Trial Court

¶ 39    Finally, Jake argues that the standard the trial court applied was erroneous because it applied the elements of a preliminary injunction to stay arbitration. Jake contends that the trial court was required to make the narrow determination as to whether there was an agreement to arbitrate the dispute in question. Jenn and Josh argue that the trial court correctly analyzed their request for a preliminary injunction to stay arbitration. We agree with Jenn and Josh.

¶ 40    In a similar case, *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 903 (2009), we analyzed the trial court's denial of a preliminary injunction to stay arbitration the same way the trial court did in this case, stating:

> "A preliminary injunction serves to preserve the status quo until the merits of a cause have been decided. [Citation.] *** A plaintiff seeking a preliminary injunction must show: (1) a clearly ascertainable right needing protection; (2) irreparable harm will occur without the injunction; (3) no adequate remedy at law exists; and (4) there is a substantial likelihood of success on the merits of the underlying action. [Citation.]" *Id.*

Here, the trial court applied the correct standard after first determining that there was no agreement to arbitrate.

¶ 41    Jake does not dispute the trial court's determination that Jenn and Josh met the requirements for a preliminary injunction to stay arbitration. Instead, he repeats that "there was no finding that the [Byard Holdings] agreement was revoked or that the MOU was ratified to include Byard Holdings." We have already determined that the trial court properly determined that the MOU superseded the Byard Holdings agreement, and therefore, we need not address this issue again. We further note that the Byard Holdings agreement stated, "This Agreement shall not be amended nor any rights under this Agreement shall be waived except by written document signed by the Company and all of the Members." Here, all members of Byard Holdings signed the MOU

and the MOU included all "affiliates," including Byard Holdings. Thus, under its terms the Byard Holdings agreement was amended or waived by the MOU.

¶ 42    For the reasons stated above, the trial court properly granted Jenn and Josh's motion for a preliminary injunction to stay Jake's arbitration. See 710 ILCS 5/2 (West 2018).

¶ 43                                III. CONCLUSION

¶ 44    The judgment of the circuit court of Winnebago County is affirmed.

¶ 45    Affirmed.